[600 NYS2d 453]

In the Matter of BENJAMIN SNEED, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 13, 1993

### APPEARANCES OF COUNSEL

*Richard M. Maltz* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Herbert Harris* of counsel *(Pope Billups & Sneed,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Petitioner, Departmental Disciplinary Committee for the First Judicial Department, moves for an order pursuant to section 603.4 (d) of the rules governing the conduct of attor-

neys of the Appellate Division, First Judicial Department (22 NYCRR), confirming a report of a Hearing Panel (Panel) which includes findings of fact, conclusions of law and a recommendation that respondent, Benjamin Sneed, be suspended from the practice of law for a period of five years. By cross motion, respondent seeks an order disaffirming the Panel's majority report and confirming the dissenting member's report, which recommends that the charges be dismissed.

Respondent was admitted to practice in the First Judicial Department on March 31, 1952. At all times relevant herein, respondent has maintained an office for the practice of law within the First Judicial Department.

On or about October 9, 1990, respondent was served with a notice and statement of second amended charges, which consisted of seven charges involving five separate clients and which alleged conversion, neglect and fraud. Petitioner ultimately withdrew Charge Seven.

Specifically, Charge One alleged that respondent forged a payee's name on checks executed by a client in order to fraudulently convert those monies in violation of Code of Professional Responsibility DR 1-102 (A) (4), (5) and (6).

Charge Two alleged that respondent neglected a legal matter entrusted to him which resulted in a delay of over six years in moving the matter to trial. Respondent also failed to obtain default judgments against three nonappearing defendants. This conduct violated DR 6-101 (A) (2) and (3), and DR 7-101 (A) (1). Respondent was further charged with failing to timely withdraw from the matter in violation of DR 2-110 (B) (4).

Charges Three, Four and Five alleged that respondent intentionally converted monies tendered to him by the buyer of a property being sold by his client in violation of DR 1-102 (A) (4). Respondent also failed to maintain proper books and records of his escrow accounts in violation of DR 9-102 (A) and 22 NYCRR 603.15 (c).

Charge Six alleged that respondent neglected a legal matter entrusted to him by failing to file a note of issue for over seven years in violation of DR 6-101 (A) (3).

The Panel conducted hearings on the charges on 17 separate hearing days, commencing in December 1990 and continuing throughout 1991, concluding on April 29, 1992.

As to Charge One, respondent was charged with 15 acts of forgery of a payee's name to personal checks made payable to

the payee, and with the fraudulent conversion of each check to his own account, all in violation of DR 1-102 (A) (4), (5) and (6). Respondent could offer no proof, documentary or testimonial, other than his own assertions that as of July 1983 he was authorized to take checks made out to a law firm and deposit the checks in his own account. The Panel majority sustained eight violations of both DR 1-102 (A) (4) and (6) for a total of 16 Code violations.

As to Charge Two, respondent was charged with neglect of a legal matter regarding James Whitfield. Respondent instituted a suit on behalf of Whitfield on March 18, 1981. Only Citibank answered the complaint. The other three defendants did not appear or answer. In November 1982, respondent moved for a default judgment, which was denied without prejudice in December 1982 on the ground of lack of proof of proper service of the summons and complaint on the three defendants. Respondent made another motion in May 1983, which was denied in June 1983 on the ground that no affidavit of merit and no affidavit of service was annexed to the moving papers. Thereafter no further effort to obtain a default judgment was made. Although Citibank was examined on March 30, 1983 and Whitfield deposed on October 3, 1983, respondent did not file a note of issue until June 10, 1985.

Following Whitfield's deposition, respondent undertook settlement negotiations with Citibank, resulting in an offer of $1,200. Respondent testified that Whitfield never communicated to respondent his response to the settlement offer and that this resulted in the delay in filing a note of issue. However, at the hearing, a letter dated January 4, 1984, signed by Whitfield and addressed to respondent, was produced. In the letter, Whitfield indicated complete dissatisfaction with the offer. When confronted with the letter, respondent stated that he did remember the letter and did not remember receiving it. In October 1984, respondent was involved in an automobile accident resulting in an amputation of his leg. He was hospitalized until December 29, 1984 and did not return to full-time practice until August or September 1985.

The action finally appeared on the trial calendar on November 4, 1985 when respondent did not appear, allegedly due to the destruction of all his car windows by children.

In the spring of 1986, Whitfield demanded the return of his files and then complained to petitioner. The majority of the

Hearing Panel found that respondent's actions in the Whitfield matter constituted neglect of a legal matter in violation of DR 6-101 (A) (3), conduct prejudicial to the administration of justice in violation of DR 1-102 (A) (5), conduct adversely reflecting on his fitness to practice law in violation of DR 1-102 (A) (6) and conduct in violation of DR 2-110 (B) (4), requiring an attorney to withdraw from employment on being discharged by a client. The majority found that respondent did not violate DR 6-101 (A) (2), which provides that a lawyer shall not handle a legal matter without preparation adequate in the circumstances, and DR 7-101 (A) (1), which provides that a lawyer shall not intentionally fail to seek the lawful objectives of his client. The majority of the Panel concluded as follows:

"Respondent had represented Mr. Whitfield for over 6 years and had not moved the matter to trial. Even allowing several months of incapacity due to his accident and for the endemic lethargy of Civil Practice in the Supreme Court before the introduction of the IAS system, this is a snail's pace.

"The Panel majority has concluded that under the circumstances respondent provided wholly inadequate counsel and advocacy to Mr. Whitfield; and in particular, by his failure to obtain default judgments against three nonappearing defendants, one of them an individual, probably deprived Mr. Whitfield of any chance of recovery for what appeared on the face of the papers to be a meritorious claim for damages, however modest."

The dissenting member of the Hearing Panel found that respondent's actions in the Whitfield matter did not constitute a violation of any of the Code provisions charged. According to the dissenting member of the Panel, there was no neglect of the Whitfield case by respondent, and respondent's actions or lack of action was justified under the circumstances involved.

As to Charges Three, Four and Five, respondent was retained in connection with the sale of a residence. Pursuant to the contract, the down payment was to be held in escrow by respondent. Respondent deposited the check in his own account, which was not a special account for the funds of clients. On the date of deposit, respondent's account was overdrawn. Respondent was further to arrange for the clearance of environmental liens concerning the property, on which title could not be closed until the liens were cleared. Not having obtained the clearance, the purchaser requested the return of the down

payment. Only after a complaint was filed did respondent return the funds by a check drawn on a nonescrow account. It was respondent's contention that he never saw the check, but on cross-examination he admitted that he did see the check. It was then his position that it must have inadvertently been deposited with rent checks by his secretary. Respondent admitted that the check was not placed in an escrow account, but stated that he did keep two escrow accounts. However, despite the Panel's request, he never produced proof of the escrow accounts. Respondent placed the blame on the late return of the down payment on his incapacity due to his automobile accident.

Based upon these facts, the majority of the Hearing Panel sustained Charge Three, which alleged that respondent, by depositing the $900 check in a nonescrow account, improperly commingled escrow funds with personal funds in violation of DR 9-102 (A) and 22 NYCRR 603.15; sustained Charge Four, which alleged that respondent converted escrow funds in violation of DR 1-102 (A) (4) and (6); and sustained Charge Five only to the extent that it alleged that respondent engaged in conduct which adversely reflects on his fitness to practice law in violation of DR 1-102 (A) (6) by neglecting and failing to properly return the $900 to Armstrong. The majority of the Hearing Panel stated in pertinent part as follows: "It is clear to a majority of the Panel that respondent was inordinately casual and careless in the way he ran his office. By his own testimony, he is a wealthy man with considerable real estate interests, rents to collect, cases to administer and general responsibilities for the affairs of clients. We do not believe that the conversion of Armstrong's $900 on June 8, 1984, was in itself wilful and intentional; what may be equally reprehensible however, was his office and banking mismanagement. Anyone putting money in respondent's hands during that period was at risk. Respondent faced with the evidence of his own carelessness could have admitted as much, and pledged to do better. Instead, his testimony was at best disingenuous, uncertain, contradictory and consistently defensive and argumentative."

The dissenting member of the Panel concluded that Charges Three and Four should be dismissed because respondent was not shown to have an intent to deceive or deprive Armstrong of the funds. The dissenting member also found that Charge Five was not supported by the preponderance of evidence since there was no showing of any wrongful intent on the part

of respondent to withhold or not return the funds. The dissenter supports this position with the fact that the demands for the return of the money were made while respondent was hospitalized and during the period he was recouperating from his accident and not in his office on a regular basis.

As to Charge Six, respondent was retained, in October or November 1981, by Barrington Richards in an action for damages for personal injuries, incurred on October 20, 1981 when he slipped and fell in a city-owned hospital. Due to an error by the Corporation Counsel, various motions were made that a notice of claim was never served. On August 22, 1984, the motion was granted and the action dismissed. Thereafter, respondent was seriously injured and was incapacitated until 1985. On June 7, 1985, the case was noticed for a precalendar conference. On February 15, 1986, respondent, for the first time, made a request for discovery, and defendant cross-moved for dismissal, again based on plaintiff's alleged failure to file a notice of claim, without referring to the previous dismissal of the action. On April 28, 1986, the cross motion was granted since respondent offered no opposition and never established that a notice of claim was filed. On October 17, 1986, respondent moved to reargue and, on October 28, 1987, the dismissal order was vacated with a decision that required that an order be settled. However, due to respondent's delay in settling an order it was not until February 26, 1988 that an order was entered.

On April 22, 1988, respondent finally served and filed a note of issue. Respondent attempted to explain the delay by his allegation that Richards was an illegal alien and needed a green card. He contends that he proceeded with the action to a limited extent because he didn't want Richards' illegal status disclosed. Richards died on February 4, 1991 at the age of 41 and, therefore, did not testify at the disciplinary hearing.

Based upon these facts, the majority of the Hearing Panel sustained Charge Six, which alleged that by neglecting zealously to prosecute Richards' cases, respondent neglected a legal matter entrusted to him in violation of DR 6-101 (A) (3). The majority of the Hearing Panel concluded as follows:

"Respondent's neglect and mishandling of this matter for a period of seven years was a further example of how haphazardly respondent seems to have run his law office, at least during the last ten years. In all of the charges before the panel, a consistent thread has been neglect, inattention to a

client or a legal matter, and an arrogant and defensive assertion that the charges were trumped up and not so serious as the Committee's Counsel has made them out to be."

The dissenting member of the Panel concluded that respondent did not neglect the Richards' matter since the delays were attributable to the Corporation Counsel's loss or misplacement of the notice of claim. The dissenter found that respondent was not able to obtain discovery until Justice Edwards' decision dated October 28, 1987, denying the motion to dismiss and reinstating the complaint, and by that time Richards had already filed his complaint with the Disciplinary Committee.

On October 7, 1992, the majority of the Hearing Panel issued its written report sustaining the charges detailed above and recommending that respondent should be suspended from the practice of law for a period of five years. The dissenting member filed a separate report recommending that the charges against respondent should be dismissed.

With respect to the most serious charges, Charges One and Four which involved conversion, the majority of the Hearing Panel concluded that the conversion in Charge One and the eight checks was intentional but not venal and that the conversion in Charge Four of the $900 down payment check was the result of gross negligence in office procedures and carelessness. In arriving at its recommended sanction, the majority reasoned in pertinent part as follows:

"However, whatever shading is given to respondent's intentions in respect of Charge One, a strong sanction is merited because, taken along with the other charges sustained herein, a pattern of practice emerges that requires intervention to protect the public. That pattern, as shown by the six charges sustained and the several violations of the code cited, is disturbing in its disregard for the care and close attention to client matters that every practicing attorney must give. Disturbing also was the disdainful and often incredible testimony of the respondent. Respondent believed evidently that he could improvise his way through this proceeding by referring to others as liars, by failing or refusing to offer documents that would help his credibility, and by histrionics and smears on the integrity of DDC Counsel and the Panel itself * * *

"A majority of the Panel considers the charges sustained against respondent as indicating serious derelictions from the 1978 Code's required standard of care to a client's affairs,

regardless of whether anyone individually views his conduct in each violation found as wilful, grossly negligent, or some combination of the two. Adding to the force of this conclusion was respondent's demeanor and conduct before the Panel. Some of the majority believe respondent lied to the Panel about certain matters; others of the Panel believe that his willingness to invent inconsistent and incredible answers to perceived difficulties was less deliberate and was more bravura or a further sign of gross carelessness in his approach to professional matters.

"This behavior of the respondent, even allowing some latitude for tempers because he was fighting for his license, and taking into account the gravity of his conduct found to be in violation of the code, is unacceptable. The cases cited above having established certain minimum sanctions for conversion of client's or another's funds, and no mitigating factors having been introduced, and considering also respondent's prior discipline (twice admonished in 1988, and sent two letters of caution, one in July 1988 and the other in April 1989), the panel majority recommends that the court suspend respondent for a period of five years."

By petition dated December 21, 1992, the Departmental Disciplinary Committee is now seeking an order confirming the Hearing Panel's majority report and imposing the recommended sanction of a five-year suspension.

By cross motion dated February 3, 1993, respondent seeks an order disaffirming the Hearing Panel's majority report and confirming the dissenting member's report, which recommends that the charges be dismissed.

A review of the evidence presented to the Panel indicates that the outcome rests solely upon questions of credibility. Ample evidence exists to support the Panel's findings that respondent negligently handled the Whitfield (Charge Two) and the Richards (Charge Six) matters in violation of Code of Professional Responsibility DR 6-101 (A) (3) and failed to timely withdraw from the Whitfield case in violation of DR 2-110 (B) (4) *(Matter of Kovitz,* 118 AD2d 285; *Matter of Forman,* 117 AD2d 71).

No finding of venal intent having been found by the Panel in Charge One, a review of evidence indicates that it cannot be concluded as the majority of the Panel found that respondent violated DR 1-102 (A) (4) *(see, Matter of Altomerianos,* 160 AD2d 96). However, respondent did violate DR 1-102 (A) (5)

and (6). The same is true of Charges Three, Four and Five, involving the real property down payment, inasmuch as the Panel found that the misconduct was the result of carelessness and sloppy office practices and, as such, was an unintentional conversion.

Under all of the circumstances and further based upon respondent's prior disciplinary record, we agree that a five-year suspension should be imposed as the appropriate sanction for the misconduct at issue.

We have examined the papers in support of respondent's cross motion and find them to be without merit.

Accordingly, the motion of petitioner to confirm the Panel report is granted to the extent indicated, the cross motion denied and respondent suspended for a period of five years, effective 30 days after the date of this order.

MURPHY, P. J., CARRO, ROSENBERGER, KASSAL and RUBIN, JJ., concur.

Petition to confirm the Panel report is granted insofar as to suspend respondent from practice as an attorney and counselor-at-law in the State of New York for a period of five years, effective August 12, 1993, and until the further order of this Court, and cross motion by respondent to dismiss the petition is denied.