[766 NYS2d 419]

In the Matter of MARIO A. VASQUEZ (Admitted as MARIO ALBERTO VASQUEZ), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 23, 2003

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill (Joseph J. Hester* of counsel), for petitioner.
*Mario A. Vasquez,* respondent pro se.

**OPINION OF THE COURT**

Per Curiam.

Respondent Mario A. Vasquez was admitted to the practice of law in the State of New York as Mario Alberto Vasquez by the Second Judicial Department on April 5, 1995 and, at all times relevant to this proceeding, he has practiced law within the First Judicial Department.

The Departmental Disciplinary Committee (the Committee) served respondent with a notice and statement of charges on March 11, 2002, alleging that he forged a memorandum, purportedly issued by an assistant to the Mayor of the City of New York, authorizing a salary increase for respondent, which he then forwarded to the city agency for which he served as Director and General Counsel. Respondent was charged with engaging in illegal conduct that adversely reflected on his honesty, trustworthiness, or fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (3) (22 NYCRR 1200.3); engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (a) (4); and engaging in conduct which adversely reflected on his fitness as a lawyer, in violation of DR 1-102 (a) (7).

Respondent answered the charges on April 1, 2002 and on May 14, 2002, the Committee and respondent entered into a prehearing stipulation which, inter alia, set forth certain undisputed facts. A hearing was held before a Referee on May 14, 2002, and in a report dated July 30, 2002, the Referee made the following findings of fact: respondent began his employment at the Civil Service Commission of the City of New York (the CSC) in 1995 upon his graduation from law school and, after several promotions, was appointed Director and General Counsel to the agency providing legal advice to the Commissioners.

The Commissioners, in 1999 and again in 2001, recommended that respondent receive a pay raise, which was denied on both occasions without explanation. The respondent and members of the Commission, however, believed it was the result of vindictiveness on the part of the newly appointed Budget Director of the Office of Management and Budget (the OMB), arising out of a memorandum respondent forwarded to the OMB questioning the value of an OMB inquiry into the handling of the CSC caseload.

Respondent, after a request for reconsideration made to the Mayor's office by a CSC Commissioner was denied, was eventu-

ally given a new job classification at a higher rate of pay, but he never recovered back pay, or lost pension and life insurance increases. Respondent, shortly after the events of September 11, 2001, had taken charge of coordinating his staff and the Commissioners in order to assure a timely return to work, and as a result, was again recommended for a raise along with other city managers. On October 12, 2001, an assistant to the Mayor issued a memorandum stating that all CSC raises had been approved except for respondent.

Respondent, on October 15, 2001, explained to the Commissioners that he received a call from a Deputy Mayor indicating his raise had finally been approved, although respondent had placed the call himself, using the name of an employee no longer working for that office. Respondent, on that same day, falsified a prior memorandum of an assistant to the Mayor to make it appear as if he had received a $5,500 salary increase and a lump-sum back payment. The memorandum was then placed by the respondent in the CSC's in-box so it would be received on or about October 17, 2001.

The discrepancy, however, was quickly discovered, the entire series of events having transpired over the course of six days, and upon being informed an investigation would be commenced, respondent confessed to the Commissioners, resigned his position, and cooperated with the Department of Investigation, the District Attorney's office, and the Committee. Respondent was subsequently charged, on December 18, 2001, with forgery in the second degree (Penal Law § 170.10 [2]), attempted grand larceny in the third degree (Penal Law §§ 110.00, 155.35), official misconduct (Penal Law § 195.00), and tampering with public records in the second degree (Penal Law § 175.20). Respondent subsequently pleaded guilty to the class A misdemeanor of official misconduct (Penal Law § 195.00 [1]), and was sentenced to a conditional discharge of one year, 10 days community service, and fined $1,000.

Respondent testified before the Referee that he was driven to commit his transgressions by the actions of the OMB Director, that he must have "snapped," and that his behavior was aberrational. The testimony of two CSC Commissioners indicated that respondent was a loyal, diligent worker of high integrity. Indeed, one Commissioner went on to aver that respondent is a morally driven individual with a firm, and passionate belief in right and wrong and, despite respondent's misdeeds, he would trust him with anything.

The Referee, as to mitigation, noted respondent's cooperation with the authorities, his "exemplary" background, his entry

into the public sector, despite the fact that the private sector would have been more lucrative, his lack of a disciplinary record, and the fact that he had exhibited "genuine remorse." The Referee, however, also stated that respondent's conduct was criminal and although he pleaded guilty to official misconduct, a misdemeanor, there was proof that he had committed acts of forgery in the second degree and attempted grand larceny in the third degree, which are felonies. In conclusion, the Referee adopted the Committee's suggested sanction and recommended that respondent be suspended for two years.

The Hearing Panel confirmed the Referee's findings with regard to liability, but recommended disaffirming the sanction as "excessively harsh," the majority of the Panel concluding that a one-year suspension was appropriate, whereas a minority recommended a six-month suspension. The Panel, in mitigation, considered, inter alia, respondent's exemplary service at the CSC, as well as other organizations, his military service, and his cooperation with the CSC, the District Attorney's office and the Committee. The Panel, in reaching its conclusion, also opined that respondent "has already suffered greatly as a result of his misconduct and he will continue to do so regardless of what sanction the court ultimately imposes."

The Committee now seeks an order confirming the findings of fact and conclusions of law set forth in the Panel's report and imposing such discipline as this Court deems fair, just and equitable (22 NYCRR 603.4 [d]).

Initially, we find that in view of the stipulated facts and the evidence presented, the Panel's findings of fact and conclusions of law, which respondent does not contest, should be confirmed. With regard to the appropriate sanction, while we are certainly aware that respondent's conduct as a public official was serious, we also note that there are substantial mitigating factors, including that respondent's conduct appears to have been aberrational; his admission of fault; his complete cooperation with investigatory authorities; his sincere expression of shame, humiliation and remorse; his pro bono and public service; his otherwise clean record and good moral character; his considerable character evidence; and the substantial adverse personal and professional consequences of his misconduct. In conclusion, viewing respondent's misconduct in light of the mitigating factors, we agree with the recommendation of the Panel's minority that a six-month suspension is appropriate (see Matter of Glotzer, 191 AD2d 112 [1993]).

Accordingly, the petition should be granted to the extent of confirming the Panel's findings of fact and conclusions of law

and suspending respondent from the practice of law for a period of six months.

NARDELLI, J.P., MAZZARELLI, SAXE, ROSENBERGER and FRIEDMAN, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of six months, effective November 24, 2003.