[826 NYS2d 43]

In the Matter of RICHARD PU, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 12, 2006

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Frankfurt Kurnit Klein & Selz, PC (Ronald C. Minkoff* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the First Judicial Department on April 24, 1978. At all times relevant to this proceeding, respondent has maintained an office within the First Department.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.3, suspending respondent for not less than six months predicated upon a six-month suspension issued by the United States District Court for the Southern District of New York, or, in the alternative, imposing a sanction that this Court deems just and proper.

By order filed June 1,. 2006, the Southern District of New York, based upon a stipulation, suspended respondent from the practice of law for a period of six months for advancing a theory in litigation and for making a representation to the court that he knew was false, both of which were deemed prejudicial to the administration of justice.

Respondent represented the plaintiffs in litigation entitled *Food Mgt. Group, LLC (FMG) v QuesTech Fin., LLC, et al.* that involved the question of who retained control over certain Dunkin' Donut franchises owned by QuesTech. Expedited discovery was ordered by the court. QuesTech made discovery demands seeking certain franchise agreements and subsequently moved for sanctions based on, inter alia, QuesTech's view that respondent and his clients engaged in bad-faith failure to comply with court-ordered discovery demands.

A sanction hearing was held before Magistrate Fox during which respondent and his clients invoked their Fifth Amendment privilege on advice of counsel and "declined to answer specific relevant questions." In an order and decision dated March 8, 2005, Magistrate Fox imposed sanctions in the amount of $238,735.64 against respondent and Tom Gianopoulos (who controls FMG) jointly and severally, for serious misconduct that included the making of false statements, violating court orders and engaging in discovery abuses in order to avoid the disclosure of the identities of the holders of the Dunkin' Donuts franchises.

The Magistrate found, among other things, that the abandoned-property theory advanced by the plaintiffs was a

"preposterous litigation position" which "compels the inference of attorney participation [in its creation]," and that respondent's client, in many instances, took contradictory positions as to whether or not FMG was a franchisee. In addition, the Magistrate found that respondent made a representation to the court indicating that the franchise agreements had already been produced in discovery when, in fact, at the time, respondent "knew that such an agreement(s) did not exist." The Magistrate stated that in a separate sanction proceeding the court had sanctioned FMG $5,000 for its "malfeasance" in failing to produce the franchise agreements and he noted that this obfuscation "underscores the degree to which Tom and [respondent] were willing to go to conceal from QuesTech that FMG's theory of the case had no basis in law or fact." Respondent and Tom appealed.

By order dated April 7, 2005, District Judge Colleen McMahon affirmed the Magistrate's findings as to respondent's (and Tom's) misconduct, but vacated the sanctions award and remanded the matter only for recalculation of the sanction amount. Judge McMahon's decision provides a helpful summary of Magistrate Fox's findings of misconduct:

> "[Judge Fox] determined that Pu [respondent] should be sanctioned because he actively impeded QuesTech, during the course of this lawsuit, from obtaining evidence that would have advised QuesTech who held the collateral it here [sic] seeks to recover. . . . I find no clear error in the Magistrate Judge's report insofar as it concludes that misconduct, including perjury, misrepresentations to the court, and multiple discovery violations, was committed by both Pu and [Tom]. . . .

> "The evidence in the record establishes beyond peradventure that Pu, an attorney, lied in pleadings submitted to *this* Court in *this* lawsuit. Pu began making misrepresentations in this action as early as the date on which he served his client's Answer and RICO Counterclaim, which was March 9, 2004, and continued to make misrepresentations (including the statement that FMG was a "finder of lost property," an assertion that Judge Fox correctly branded as "preposterous"), and to proffer testimony from [Tom] that he knew to be false until he was replaced as FMG's counsel. Specifically, Pu signed [various

pleadings of FMG] . . . [that] contained material misstatements of fact, and Pu knew they contained material misstatements of fact.

"The evidence also establishes that Pu intentionally made numerous false statements to the Magistrate Judge in open court, as well as to this Court and to opposing counsel, concerning the production (or, to be more precise, the non-production) of the 'FMG Franchise Agreement.' Pu knew that there was no such document, because the evidence (which includes statements made or endorsed by Pu in other lawsuits, such as the January 2, 2004 letter) demonstrates that Pu knew perfectly well that FMG was not the holder of the relevant Dunkin Donuts franchises. Nonetheless, Pu did not apprise the Court (either me or Judge Fox) of this fact, but repeatedly insisted [that] the FMG Franchise Agreement (or agreements) had been produced by FMG during discovery (to the point of alleging in a hearing that QuesTech must have lost the box of documents to which this non-existent agreement had been produced). . . .

"Almost everything that occurred in this lawsuit between March 9 and FMG's filing in bankruptcy—all the obfuscations and misrepresentations during discovery, all the motions to compel before Judge Fox, all the concealment and all the efforts that had to be expended to uncover the concealment—would never have happened if, in the original Answer and Counterclaims, Pu had forthrightly revealed that FMG was not the franchisee and did not possess the collateral. I agree completely with Judge Fox that the actions committed by Pu (and Gianopoulos) 'are so completely without merit, as to require the conclusion that they must have been undertaken for some improper purpose such as delay.' "

Judge McMahon also referred the matter of respondent's misconduct to the Grievance Committee of the Southern District of New York, which based on the findings made by Magistrate Fox on March 8, 2005, as affirmed by Judge McMahon on April 7, 2005, directed respondent to respond to allegations that he knowingly: (1) falsely represented that FMG was the franchisee

of Dunkin' Donuts shops; (2) falsely represented to the court that FMG controlled the collateral at issue in *FMG v QuesTech*; (3) violated discovery orders by refusing to produce certain franchise agreements; (4) represented to the court the existence of documents the court later determined did not exist; (5) engaged in abuses for the purpose of delaying and misleading his adversary and the court; and (6) sponsored perjured testimony, in violation of Code of Professional Responsibility DR 1-102 (a) (1), (4), (5) and (7) and DR 7-102 (a) (1), (2), (3) and (5) (22 NYCRR 1200.3, 1200.33). On or about November 2, 2005, respondent submitted an extensive response wherein he denied the misconduct alleged.

Thereafter, on or about May 26, 2006, respondent entered into a stipulation with the Grievance Committee in which he admitted to two acts of misconduct in violation of DR 1-102 (a) (1) ("[a] lawyer shall not . . . [v]iolate a disciplinary rule") and (5) ("[a] lawyer shall not . . . [e]ngage in conduct that is prejudicial to the administration of justice") and stipulated that "[i]n the course of [his] representation [of FMG], Pu advanced the theory that FMG had acquired title to certain property as the finder of abandoned property. At the time of advancing this theory, Pu had reason to know that the property had in effect been transferred to companies controlled by [Tom]." Respondent also stipulated that "in the course of the *FMG v QuesTech* litigation, Magistrate Fox inquired of Pu whether his client had produced to QuesTech certain franchise agreements allegedly held by FMG. Pu indicated to the Court that he was unsure whether those documents had been produced in discovery and represented that he would follow the Court's instruction that he look for those documents among the documents produced by his client. At the time Pu made these representations, he knew that no such franchise agreements existed."

The stipulation was so ordered by the United States District Court for the Southern District of New York and respondent was suspended from the practice of law for a period of six months and directed to complete 12 hours of continuing legal education courses in "ethics, civility, or the attorney's obligations in the discovery process before he may request to be reinstated."

In seeking an order pursuant to 22 NYCRR 603.3, the Committee correctly asserts that only three defenses may be raised by an attorney seeking to avoid the imposition of reciprocal discipline. They are: (1) that the procedure in the foreign jurisdic-

tion was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; (2) that there was an infirmity of proof establishing the misconduct; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this jurisdiction.

Notably, respondent does not object to the imposition of reciprocal discipline, but contends that he should receive a lesser sanction. He argues that he should only receive a public censure and, certainly no more than a six-month suspension, because his conduct was isolated and not intentional; that, if a suspension is imposed by this Court, it should be made retroactive to the effective date of his federal suspension; and he claims that his discipline was not based on the findings of Magistrate Fox.

In support of his contention that censure is appropriate, respondent notes that his misconduct, as outlined in the stipulation, did not constitute intentional misrepresentation, rather, it reflected only that he failed to correct his adversary's statement thereby leaving an erroneous impression (see Matter of Lillard, 255 AD2d 88 [1999] [censure for misrepresentation about representation of insured]; Matter of Thomas, 239 AD2d 27 [1998] [censure for reckless statements about a judge and advancement of frivolous theory in case]). He refers to what he describes as the carefully negotiated operative word of "indicated," as opposed to "represented," used in paragraph 5 of the stipulation, which states, in relevant part: "Pu indicated to the Court that he was unsure whether those documents had been produced in discovery . . . . At the time Pu made these representations, he knew that no such franchise agreements existed." Thus, respondent argues, there was no deliberate misrepresentation on his part.

As the Committee points out in reply, however, the plain language of that paragraph (which uses the word "representations" in addition to "indicated") makes clear that respondent led the court to believe that certain documents may have been produced in discovery when respondent "knew" that was untrue. Thus, although respondent only stipulated to conduct that was "prejudicial to the administration of justice," his admitted actions of making a false representation to the court and knowingly pursuing a frivolous litigation theory, would clearly constitute intentional misconduct in this jurisdiction in violation of DR 1-102 (a) (4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and DR 7-102 (a) (5) ("[k]nowingly mak[ing] a false statement of law or fact" in the

representation of a client). In fact, respondent was initially charged by the Southern District's Grievance Committee with "misleading" the court and making "false representations" in violation of those disciplinary rules, but stipulated to lesser culpability. Moreover, in opposition to respondent's request for a public censure, the Committee asserts that this Court may impose whatever discipline this Court feels appropriate and base it on the "conduct" that gave rise to the discipline in the foreign jurisdiction (22 NYCRR 603.3 [a]).

Respondent's claim that his discipline was not based on the decision of Magistrate Fox is without merit. The Southern District's stipulation of discipline expressly referenced the order to show cause, which the Grievance Committee served on respondent to commence its disciplinary proceeding, which specifically stated was "based on the findings issued by Magistrate Mark D. Fox with respect to Pu's conduct in the Southern District of New York." Thus, Magistrate Fox's decision was a basis for the stipulation which led to respondent's discipline.

As to sanction, respondent urges that if this Court suspends him it should be retroactive to the effective date of his federal suspension (*see e.g. Matter of Singer*, 302 AD2d 179 [2002] [federal suspension imposed nunc pro tunc because of prompt notification of discipline and did not practice in state courts during federal suspension]; *see also Matter of Cohn*, 308 AD2d 79 [2003] [Court imposed retroactive five-year suspension as agreed to by Committee]). Respondent avers that he agreed to the federal suspension in March 2006, and executed the stipulation in May 2006. He states that since March 2006, he has refrained from accepting state court litigation and has not represented clients in state court. Additionally, at the present, he claims he represents no clients in either state or federal court. Finally, in his affidavit, respondent states that the two years since the charges arose have been "extremely upsetting for me, both personally and professionally," he is very sorry for what he did, he has been a solo practitioner since 1986 primarily in federal court, he has an unblemished record, and he clerked for a federal judge and worked for a former US Attorney for the Southern District of New York, and feels that he has let down the people who instilled respect in himself.

It is a generally accepted principle that the jurisdiction in which respondent practiced law at the time of the offense has the greatest interest in the issue and the public policy considerations relevant to such disciplinary actions (*see Matter of*

*Dranov*, 14 AD3d 156 [2004]). We find respondent's conduct sufficiently serious to reject his argument for a censure instead of suspension. Although respondent only stipulated to conduct prejudicial to the administration of justice (DR 1-102 [a] [1], [5]), his stipulated conduct could very well be considered intentional misrepresentations, which is what the Magistrate found and which respondent was initially charged with by the Southern District's Grievance Committee, and, this Court is free to impose whatever sanction it deems appropriate (*see e.g. Matter of Lowell*, 14 AD3d 41 [2004], *appeal dismissed* 4 NY3d 846 [2005]; *Matter of Dinhofer*, 257 AD2d 326 [1999]).

Accordingly, we reject respondent's request to impose reciprocal discipline nunc pro tunc and, based upon precedent in this Court involving attorneys who, like respondent, made misrepresentations to a court (*see Matter of Berglas*, 16 AD3d 1 [2005]; *Matter of Forrest*, 265 AD2d 12 [2000]; *Matter of Donofrio*, 231 AD2d 365 [1997]), the petition should be granted and respondent suspended from the practice of law in New York for a period of one year to commence 30 days from the date of this order.

ANDRIAS, J.P., NARDELLI, GONZALEZ, SWEENY and CATTERSON, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of one year, effective January 12, 2007 and until further order of this Court.