OPINION OF THE COURT
Per Curiam.
Respondent Anthony M. Mahoney was admitted to the practice of law in the State of New York by the First Judicial Department on May 13, 1971. At all times relevant to this proceeding, he maintained an office for the practice of law within the First Judicial Department. Respondent is also admitted to practice, and does practice, in the State of New Jersey.
On October 28, 2002, respondent was convicted, after a jury trial, in Superior Court of the State of New Jersey, Union County, of one count of theft by failure to make required disposition of property in the third degree (NJ Stat Ann § 2C:20-9), one count of misapplication of entrusted property in the third degree (NJ Stat Ann § 2C:21-15) and two counts of forgery in the fourth degree (NJ Stat Ann § 2C:21-1 [a] [2], [3]). He was sentenced to three years’ probation, 500 hours’ community service, and a fíne of $5,000, plus assessments.
Respondent’s theft convictions resulted from his failure to pay certain clients their $50,000 portion of a $75,000 settlement payment, received in January 1999 in connection with the settlement of the clients’ wrongful death action relating to the death of their son. Respondent deposited the $75,000 check into his attorney trust account, which had a balance of $250 the previous day. Respondent then depleted most of the funds in the escrow account within two days, by writing checks to pay clients and other firm obligations. The forgery convictions were based on his forgery of the clients’ signatures on the settlement check, which was made payable to respondent’s law firm and the two clients. Respondent eventually made payment of the $50,000 to his clients in December 1999, but only after he became aware of a police investigation into his conduct. After an ethics investigation was commenced, respondent consented to his immediate and temporary suspension in New Jersey in 2000 (163 NJ 66, 747 A2d 277 [2000]).
In June 2003, the Departmental Disciplinary Committee petitioned this Court for an order striking respondent’s name from the roll of attorneys pursuant to Judiciary Law § 90 (4) (b) on the ground that he was automatically barred from practicing in New York upon his convictions in New Jersey. The Committee argued that the New Jersey theft offenses were essentially *171 similar to the New York felony of grand larceny in the third degree (Penal Law § 155.35). Respondent cross-moved for an order declaring that the crimes of which he was convicted in New Jersey were “serious crimes,” as defined in Judiciary Law § 90 (4) (d), and granting him a hearing pursuant to Judiciary Law § 90 (4) (h) to determine an appropriate sanction. Respondent contended that the New Jersey felonies do not have a New York analogue in that they are not essentially similar to any New York felony, but, rather, are essentially similar to the New York misdemeanor of misapplication of property (Penal Law § 165.00).
By order entered January 20, 2004 (3 AD3d 197 [2004]), this Court denied the Committee’s petition to disbar, and granted respondent’s cross motion for a determination that the New Jersey theft offenses of which he was convicted constitute “serious crimes” within the meaning of Judiciary Law § 90 (4) (d). Specifically, after comparing the elements of the New Jersey theft offenses to the New York misdemeanor of misapplication of property and the New York felony of grand larceny in the third degree, this Court found that the New Jersey offenses were analogous to the misapplication charge since, unlike the crime of larceny, there is no requirement “that the economic value of the property is lost to the owner or acquired by the offender” (3 AD3d at 199). This Court further noted that defendant’s conduct did not rise to the level of larceny because “[w]hile respondent delayed in paying over the settlement funds to his clients for nearly one year, it has not been established that he appropriated the funds to his own use” (id.).
Accordingly, having determined that respondent committed a “serious crime,” we immediately suspended respondent from practice (Judiciary Law § 90 [4] [f]), and directed that he show cause why, after a hearing before a referee, a final order of censure, suspension or disbarment should not be made (Judiciary Law § 90 [4] [g], [h]).
In April and May 2004, a sanction hearing was held before the Referee. Respondent offered evidence in mitigation of the charges, including his medical history which included a heart attack in April 1997, a diagnosis of prostate cancer in April 1999 and an evaluation by a psychologist. Respondent also offered abundant character evidence, in the form of testimony and letters attesting to his excellent character and honesty, his unblemished disciplinary history, his military service as a captain during the Vietnam War and his strong record of pro bono and community service. In a report and recommendation *172 dated June 21, 2004, the Referee recommended disbarment based on respondent’s intentional conversion of escrowed funds and his repeated false representations to the clients regarding the delay in disbursing such settlements funds. The Referee also found that petitioner’s medical conditions were not causally related to his misconduct.
Before a Hearing Panel could review the Referee’s findings, respondent’s convictions of the theft and forgery charges were reversed by the New Jersey Appellate Division (376 NJ Super 63, 868 A2d 1171 [2005]), and remanded for a new trial. The reversal was based on three independent grounds: the trial court’s improper limitation of character witness testimony, inadequate jury instructions relating to New Jersey Rules of Court rule 1:21-6 (ethics rule which outlines the recordkeeping, trust and business bank account obligations of attorneys) and improper remarks by the prosecutor during summation (376 NJ Super at 98, 868 A2d at 1192).
The Union County prosecutor’s office appealed to the New Jersey Supreme Court, which reversed in part and affirmed in part (State v Mahoney, 188 NJ 359, 908 A2d 162 [2006], cert denied 549 US 995 [2006]). The court rejected respondent’s claims regarding character testimony and the prosecutor’s summation, but affirmed the Appellate Division’s holding that the trial court should not have submitted the text of the ethics rule to the deliberating jury without proper instructions on how to consider and apply such rule in the context of a criminal case. The court noted that the jury should have been instructed that while it may consider a violation of the ethics rule “as evidence of defendant’s purposeful conduct... [a] violation of the Rule’s requirements, in and of itself, is insufficient, as a matter of law, to sustain a finding of criminal culpability” (188 NJ at 379, 908 A2d at 175).
Pursuant to the above ruling, the New Jersey Supreme Court reinstated the forgery convictions (which were unaffected by the error in jury instructions), and reversed and remanded the two theft convictions for further proceedings (188 NJ at 380, 908 A2d at 175). However, upon remand, the Union County prosecutor declined to retry respondent on the theft counts, which were dismissed on the prosecutor’s motion.
After the New Jersey Supreme Court ruling, respondent petitioned this Court for reinstatement, and, in October 2006, this Court granted the petition to the extent of referring the matter back to the Referee “for further evaluation and issuance *173 of a supplemental report and recommendation” as to the appropriate sanction for respondent’s remaining “serious crime” convictions, namely, the two counts of fourth-degree forgery.
In her supplemental report and recommendation, dated May 29, 2007, the Referee initially noted that the scope of this “serious crime” proceeding had been narrowed since the earlier 2004 hearing, based on the New Jersey court’s reversal of the theft convictions. According to the Referee, the dismissal of these counts “wipes the slate clean as to the theft of property as a serious separate charge,” citing Matter of Barash (20 NY2d 154, 158 [1967] [“reversal of a conviction . . . nullifies it as if it had never been”]). Thus, the Referee concluded that the “theft of property” issue was no longer before the court, and that, accordingly, she would confine her review to the forgery charges, respondent’s delay in payment and the misrepresentations to the clients concerning the status of the settlement funds.
In mitigation, the Referee again noted respondent’s lack of disciplinary history, his excellent reputation in the legal community, his work ethic and his community involvement. She also took a somewhat different view of his restitution, noting that his return of the funds before the end of 1999 could be considered “a negation of any long-term intent of conversion and, instead, a delay in payment.” Although acknowledging that similar cases involving forgery generally warranted a suspension of six months to two years, the Referee found that respondent’s two misrepresentations to the clients and his immediate withdrawal of escrowed funds required a more severe sanction. Accordingly, the Referee recommended a three-year suspension, but made the suspension retroactive to the date of this Court’s original January 20, 2004 suspension, due to “the protracted delays with the New Jersey decision-making process.”
A Hearing Panel was convened to hear oral argument in September 2007. In its report dated January 31, 2008, the Panel recommended a more severe sanction of a five-year prospective suspension “given the intentionally fraudulent act of the forgery and withdrawal of the Settlement Funds followed by continued dishonesty, misrepresentation and deceit.” The Panel further noted that settlement funds were finally paid only after respondent became aware that he was under investigation by the New Jersey prosecutor’s office, and that his medical conditions were not temporally related to his misconduct.
The Committee now moves for an order confirming the Hearing Panel’s recommendation of a five-year prospective suspen *174 sion. It relies on respondent’s intentionally fraudulent act of committing two forgeries, a lack of extraordinary mitigating factors or genuine contrition, and the significant aggravating factors of misrepresentations to the clients and the immediate withdrawal of their funds. Respondent cross-moves for an order confirming the Referee’s recommendation of a three-year retroactive suspension and reinstating him to the practice of law immediately. He contends that the Referee’s credibility findings and conclusions are entitled to great weight, and further argues that New York law would not have permitted the forgery counts to be reinstated, citing People v Baghai-Kermani (84 NY2d 525, 532-33 [1994]; but see People v Doshi, 93 NY2d 499, 506 [1999] [court declines to reverse all charges where no prejudicial “spillover” effect on the nontainted charges]).
In this “serious crime” proceeding, the only issue for this Court to decide is the appropriate sanction to impose based on the nature and circumstances of the “serious crime” offense, plus any aggravating or mitigating circumstances (Matter of Levy, 37 NY2d 279 [1975]). Since the only remaining “serious crime” offenses are the forgery offenses, we look to our precedents in this area to determine the appropriate sanction. Two principles emerge from these authorities. First, this Court has consistently viewed forgery, particularly when committed by an attorney, as a serious matter (.Matter of Glotzer, 191 AD2d 112, 114 [1993]). Second, the sanctions generally imposed for forgery offenses range from a short suspension to disbarment, “depending upon the repetitiveness of the misconduct and the desire for personal profit” (id,.).
The cases cited by respondent in support of a lesser suspension involve isolated instances of forgery, with limited additional misconduct. For instance, in Matter of Vasquez (1 AD3d 16 [2003]), a six-month suspension was imposed on the respondent, an attorney employed by a government agency, for forging a memorandum purportedly made by another government official authorizing a salary increase for the attorney. The Committee found substantial mitigation based on the attorney’s resignation, his cooperation with the authorities and his remorse, notwithstanding his criminal conviction of official misconduct, a misdemeanor.
Similarly, in Matter of Donofrio (231 AD2d 365 [1997]), the respondent attorney was suspended for one year based on his false statements made to a Parking Violations Bureau manager and an Administrative Law Judge, and his submission of falsi *175 fied and forged documents in the proceeding, in order to expedite the release of his car from a tow pound. Likewise, in Glotzer (191 AD2d at 113-115), an attorney was suspended for six months based upon this Court’s finding that he forged his client’s signature on a stipulation with the client’s landlord, and refused to admit the forgery.
Another common factor in those proceedings where limited suspensions were imposed for forgeries was the absence of any profit, or desire for personal gain, by the respondent attorney (see Matter of Alviar, 21 AD3d 50 [2005] [one-year suspension for forging client’s signature on two letter agreements, lack of cooperation and failure to register as an attorney]; Matter of Halper, 141 AD2d 201, 203 [1988] [one-year suspension for forging judge’s signature on purported order granting respondent legal custody of teenage son of a friend]; Matter of Risoli, 101 AD2d 251, 253 [1984] [three-year suspension imposed for conspiracy to defraud where unblemished record and no desire for personal gain]).
In contrast, the cases cited by the Committee in support of their request for a five-year suspension involve more egregious and repetitive misconduct, in addition to forgery. In Matter of Feldman (252 AD2d 76, 77 [1998]), the respondent attorney was disbarred based on misconduct in four separate matters, including making material misrepresentations on a loan application, altering title search reports, neglecting three legal matters entrusted to him and making significant misrepresentations regarding the status of clients’ cases. In addition, this Court noted that the respondent attorney’s professed remorse was “unconvincing,” and that his misconduct extended to personal dealings for his own personal gain (id. at 80).
Similarly, in Matter of Perrini (232 AD2d 138 [1997]), this Court found that disbarment was an appropriate sanction where the respondent attorney committed acts of professional misconduct in five separate transactions, including two instances of conversion of client funds held in escrow, forgery of a retainer agreement and false statements on a client’s expense list, forgery and backdating of a purported notice of claim filed with a bankruptcy court, making false statements to more than one court and numerous escrow account violations.
And in Matter of Sneed (191 AD2d 118 [1993], appeal dismissed 82 NY2d 747 [1993], cert denied 513 US 816 [1994]), where a five-year suspension was imposed, the misconduct alleged related to five separate clients, 15 acts of forgery, at least *176 two instances of conversion and multiple instances of neglect (see also Matter of Day, 29 AD3d 240 [2006] [attorney disbarred for neglect of five matters, failure to cooperate, forgery of two court orders and failure to return fee]; Matter of Furtzaig, 305 AD2d 7 [2003] [five-year suspension for neglect and forging court orders to support misrepresentations to clients that their cases were being litigated]).
A review of these precedents convinces us that respondent’s misconduct in this case is more similar to those cases imposing a short suspension after an isolated instance of forgery (Matter of Vasquez, supra). The evidence before the Referee clearly established that respondent had an unblemished and impeccable reputation as an attorney in the community in which he practiced. He had no disciplinary history in 35 years of practice, and his service in the military and his community further establish that he is a diligent and committed person. In short, every piece of evidence in this record points to the fact that this incident of serious professional misconduct was truly aberrational in the context of respondent’s entire legal career.
Nevertheless, this single instance of professional misconduct cannot be dealt with lightly. Forgery by an attorney is a serious matter, and strikes at the very heart of an attorney’s obligations to be honest in all of his or her professional and personal dealings. Moreover, but for the New Jersey Supreme Court’s unexpected reversal of the theft counts based on an erroneous jury instruction, respondent could easily be standing before us in a starkly different light—as a convicted felon in New Jersey for two offenses that would constitute felonies in New York. Indeed, absent the reversal and dismissal, respondent would face automatic disbarment in this state (Matter of Imbriani, 238 AD2d 53 [1997] [attorney’s New Jersey conviction of theft by failure to make required disposition of property received in the third degree is a predicate for automatic disbarment since it is essentially similar to the New York felony of grand larceny in the fourth degree]).
The Referee’s recommended sanction of a three-year retroactive suspension to January 2004, which would have already expired in January 2007, is too lenient. While a two-year suspension might be appropriate if the misconduct was limited to the forgery, respondent’s additional misconduct in making false representations to his clients and his temporary use of such funds to pay personal or firm obligations warrants a more severe sanction. Also relevant is respondent’s minimal expression *177 of remorse, since it provides this Court with a basis to evaluate whether respondent is deserving of a chance to practice law again in this state in the near future. In sum, having considered respondent’s convictions of the serious crimes of fourth-degree forgery, his misrepresentations and use of escrow funds, and the aggravating and mitigating circumstances previously mentioned, we conclude that a suspension of three years is the appropriate sanction.
Accordingly, the Hearing Panel’s findings of fact and conclusions of law should be confirmed, the sanction disaffirmed, and respondent suspended for a period of three years from the date of this order.
Tom, J.E, Gonzalez, Nardelli, Williams and Buckley, JJ., concur.
Respondent suspended from the practice of law in the State of New York for a period of three years, effective the date hereof, and until the further order of this Court. Cross motion denied.