[965 NYS2d 418]

In the Matter of SHANE O. RIOS (Admitted as SHANE OMAR RIOS) and DANIEL H. LEVY (Admitted as DANIEL HUDSON LEVY), Attorneys, Respondents. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 14, 2013

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Norma I. Melendez* of counsel), for petitioner.

*Susan Brotman*, for respondents.

## OPINION OF THE COURT

Per Curiam.

Respondents Shane Omar Rios and Daniel Hudson Levy were admitted to the practice of law in the State of New York by the Second Judicial Department on June 15, 2005 and February 16, 2005, respectively. At all times relevant to this proceeding, respondents maintained an office for the practice of law within the First Judicial Department.

On May 18, 2011, the Departmental Disciplinary Committee (Committee) served respondents with a notice and statement of charges containing three charges alleging professional misconduct stemming from respondents' representation of a client in a personal injury matter.

Charge one of the Committee's statement of charges alleged that respondents violated rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0), which prohibits an attorney from engaging in conduct involving "dishonesty, fraud, deceit or misrepresentation." Specifically, the Committee alleged that respondents intentionally concealed investigative information regarding their client's case from an attorney whom they retained to try the client's personal injury lawsuit.

Charge two alleged that respondents violated rule 8.4 (h) of the Rules of Professional Conduct (22 NYCRR 1200.0), which prohibits an attorney from engaging in any conduct that adversely reflects on his or her fitness as an attorney, by informing their client about the law governing liability for her accident prior to asking her to identify the precise situs of her accident.

Charge three alleged that respondents violated rule 1.1 (b)* of the Rules of Professional Conduct (22 NYCRR 1200.0), which prohibits a lawyer from handling a legal matter that he or she

---

* Initially, the Committee charged respondents with violating rule 1.1 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0). However, the parties

"knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it." The Committee alleged that respondents violated this rule by failing to ascertain the precise location of their client's accident in a nonsuggestive manner and by failing to inquire about their client's criminal history after she acknowledged that she had a driving under the influence of alcohol (DUI) conviction.

On June 16, 2011, respondents submitted an answer to the statement of charges wherein they admitted each and every factual allegation therein. Respondents also admitted that they violated the rules alleged in charges two and three, thus admitting liability as to those charges. However, they denied liability as to charge one.

Thereafter, on August 16, 2011, the parties appeared for a hearing before a Referee. All parties executed a pre-hearing stipulation, wherein respondents once again admitted the facts alleged in the Committee's statement of charges. Whereas respondents had initially denied liability as to charge one and admitted liability as to charges two and three, in the stipulation respondents admitted liability as to charges one and two and only admitted partial liability as to charge three. Specifically, while respondents admitted that they violated rule 1.1 (b) of the Rules of Professional Conduct (22 NYCRR 1200.0) by failing to ascertain the precise location of their client's accident in a nonsuggestive manner, they opposed the portion of charge three which alleged that they failed to ask about their client's criminal history in violation rule 1.1 (b).

Respondents' testimony at the hearing, the testimony of five character witnesses, and documents stipulated and/or admitted in evidence—including the aforementioned pre-hearing stipulation—established the following:

In January 2008, respondents, who met while they both attended Fordham Law School, opened Rios & Levy LLP., their own firm focusing on personal injury matters. Even though neither respondent had ever handled a personal injury matter from start to finish, respondents, both of whom had worked for other personal injury law firms since their graduation from law school in 2004, believed they could amass the requisite experience during the pendency of the cases for which they were retained. On

subsequently agreed that a violation of rule 1.1 (b) was the more appropriate charge.

March 20, 2008, respondents were contacted by a former client who sought to have respondents meet with her mother regarding an injury sustained by the client's mother in a fall. Respondents met with this prospective client at her home and she told them that she fell on a badly cracked sidewalk while exiting a church on Lockwood Avenue, in the Bronx. While the prospective client could neither remember the name of the church nor its exact location, she knew that the church and the sidewalk on which she fell were located on a street which intersected with Lockwood Avenue.

Respondents took this client's case and the very next day filed the requisite retainer agreement. Thereafter, via an Internet search, they discovered that the only church on Lockwood Avenue was Bryn Mawr Presbyterian Church, which was not located in the Bronx but was instead located in Yonkers. Respondents immediately notified the church about their client's accident and a few days thereafter the church's claims administrator confirmed that the claim had been received. Becoming aware that liability for sidewalk claims in Yonkers required prior written notice to the municipality, respondents sent Freedom of Information Law (FOIL) requests to the City of Yonkers seeking information regarding sidewalk defects on the sidewalk abutting the church. Upon their client's refusal to accompany them to the situs of the accident, respondents then went to the church to investigate the claim and take photographs. Once there, respondents found no sidewalk defects on the only sidewalk abutting the church. However, respondents did notice that the sidewalk/driveway abutting a house across the street from the church was badly cracked. Respondents photographed both the sidewalk abutting the church and the badly cracked sidewalk abutting the house across the street. Upon receiving a response to their FOIL request, which indicated the absence of prior written notice for any defects on the sidewalk abutting the church, respondents realized that their client had no viable claim against the church and her only chance of recovery was an action against the homeowner whose property abutted the badly cracked sidewalk/driveway across the street.

In May 2008, respondents met with their client. In order to ensure that she had a viable case, they decided to influence her by first explaining the law, emphasizing that if she fell on the sidewalk abutting the church, she would have no viable claim for her injuries. However, they indicated that if she fell across

the street on the driveway, she had a viable case against the owner of the abutting property. They then showed their client pictures of both the undamaged sidewalk abutting the church and of the badly cracked sidewalk/driveway across the street. Upon asking her where she fell, the client indicated that she had fallen on the sidewalk across the street from the church. Shortly thereafter, respondents notified both the owner of the home abutting the sidewalk/driveway across the street from the church and her insurance company of their client's accident. In June 2008, respondents commenced an action against the homeowner and pursued discovery. In February 2009, after plaintiff had been deposed and denied having a criminal history, she asked respondents whether a DUI constituted a criminal conviction. Making no further inquiry about their client's criminal history, respondents researched the question posed by their client, answering the same in the negative.

In September 2009, when the court scheduled her action for trial, respondents realized that they were incapable of trying the case. Thus, respondents retained experienced trial counsel. Respondents then briefed trial counsel on the procedural history of the case. However, in order to conceal that they had improperly influenced their client to misrepresent the location of her accident, respondents did not tell trial counsel that the client had initially indicated that she fell on the sidewalk abutting the church. Moreover, when respondents gave trial counsel the case file, they removed the claim letter they initially sent to the church, the acknowledgment from the church's claims administrator, photographs of the sidewalk abutting the church, the FOIL requests made to the City of Yonkers, and the responses thereto. At trial, respondents' client's case was dismissed because, inter alia, she was confronted with her prior criminal convictions and was impeached by her deposition testimony denying them.

With the exception of the portion of charge three which respondents did not admit, respondents acknowledged that their actions in handling their client's case was dishonest and shameful. Testifying about the undue influence exerted on their client, Levy testified that "the way she came to allege that she fell where she fell was influenced by the way I explained the law to her." Respondents expressed considerable remorse for their actions, attributing their behavior in part to youth and inexperience. In order to ensure that they never engage in this kind of misconduct in the future, respondents made changes to their

practices, procuring experienced attorneys to serve as mentors and altering their intake process to ensure they gather all facts from clients prior to explaining the law. Respondents also chronicled their public service and community service, such as traveling to Florida during the previous presidential election to ensure that the rights of voters were protected.

The Referee heard from several character witnesses, including an associate at Simpson Thatcher & Bartlett who testified that respondent Levy was a genuine and honest person, was embarrassed about his behavior, and that Levy indicated he would not engage in this behavior in the future. With respect to respondent Rios, the Referee heard from a case manager at Kings County Surrogate's Court who testified that Rios is part of the Big Brother Program and is her son's Big Brother, that Rios is a positive role model, and that his misconduct did not change the way she felt about him.

With respect to charges one, two, and the portion of three alleging that respondents failed to ascertain the location of their client's accident in a nonsuggestive manner, the Referee found, consistent with the allegations in the Committee's statement of charges, that respondents through their misconduct violated all of the sections of the Rules of Professional Conduct charged by the Committee. With regard to the portion of charge three alleging that respondents violated rule 1.1 (b) of the Rules of Professional Conduct (22 NYCRR 1200.0) by failing to ask about their client's criminal history, the Referee found that respondents' failure to inquire about their client's criminal history did not violate this rule where, as here, the client's inquiry as to whether a DUI constituted a criminal conviction did not put respondents on notice that she had other convictions about which they should have inquired. Finding that even though respondents presented substantial mitigating evidence, their behavior—insofar as it was serious, unprofessional, dishonest, long-standing, motivated by financial gain, caused injury to a third party, and wasted valuable court resources—warranted a six-month suspension from the practice of law rather than a private reprimand.

A Hearing Panel (Panel) heard arguments in support and in opposition to confirmation of the Referee's report and recommendation. For the very reasons articulated by the Referee, the Panel confirmed the Referee's Report. However, noting that respondents engaged in a scheme motivated by financial gain whereby they deliberately influenced and encouraged their cli-

ent to lie and thereafter perpetuated the lie for more than a year, the Panel concluded that a nine-month suspension, rather than the six months recommended by the Referee, was warranted.

The Committee now petitions this Court for an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2), and Judiciary Law § 90 (2), confirming the Panel's determination as to both liability and sanction, thereby suspending respondents for a period of nine months. Respondents cross-move seeking confirmation of the Panel's determination on liability, disaffirming the Panel's determination as to sanction, and seeking a sanction of no more than three months suspension. We hereby grant the Committee's application, grant respondents' cross petition, in part, and confirm the Panel's determination in its entirety.

To the extent that respondents admitted all the factual allegations in the Committee's statement of charges in their answer and admitted liability to charges one, two, and part of three in the pre-hearing stipulation, the Panel's determination on liability is fully supported by the record and is therefore confirmed. Given the record before us, we also find that a nine-month suspension, rather than a suspension of three months or less, is the appropriate sanction.

Since cases where we are called upon to determine the appropriate sanction for attorney misconduct are inherently fact specific, no one fact is dispositive on the issue of sanction (*Matter of Hankin*, 296 AD2d 238, 240 [1st Dept 2002]). "Instead, it is more appropriate, and certainly more prudent, to conclude that the circumstances surrounding the proven unethical or unlawful behavior, the professional situation and history of a respondent, and any other relevant aggravating and mitigating factors will all be considered equally in any disciplinary decision" (*id.*). However, a review of this Department's precedent evinces that in cases where the misconduct alleged involves the misrepresentation of facts to a court, tribunal, or government agency, suspension is warranted even in the face of substantial mitigating circumstances (*see Matter of Brenner*, 44 AD3d 160 [1st Dept 2007] [despite the existence of several mitigating factors, suspending attorney for six months for submitting an affidavit to a federal court misrepresenting whether he had ever been disciplined by any court before which he had been admitted]; *Matter of Pu*, 37 AD3d 56 [1st Dept 2006] [despite substantial mitigating factors, suspending attorney for one year for lying in pleadings submitted to the court during the course

of a lawsuit and making misrepresentations in open court], *appeal dismissed in part, denied in part* 8 NY3d 877 [2007]; *Matter of Becker*, 24 AD3d 32, 33-35 [1st Dept 2005] [despite compelling mitigating factors, suspending attorney for three months when, in order to settle a client's case, he altered settlement documents and documents filed with the Office of Court Administration in order to conceal that his client had died before settlement]; *Matter of Vasquez*, 1 AD3d 16 [1st Dept 2003] [despite substantial and compelling mitigating factors, suspending attorney for six months for verbally misrepresenting to commissioners of a city agency that a deputy mayor had authorized a raise in his pay and thereafter falsifying a memorandum to support his false claim]).

Here, based on the record, it is clear that respondents intentionally influenced their client to misrepresent the situs of her accident in order to pursue an action which they knew was fraudulent from its inception. Thereafter, respondents, with full knowledge that they were perpetrating a fraud, commenced an action against an innocent third party, filing papers, such as pleadings, containing misrepresentations with the court. Then, for over a year, respondents continued to conduct discovery and attend court conferences with full knowledge that the action they were pursuing was based on a misrepresentation which they themselves influenced. When forced to retain trial counsel, respondents not only failed to apprise counsel that their client's accident did not occur where she alleged, but in order to conceal their prior misconduct, they sanitized the case file, removing any evidence as to the accident's actual situs. While respondents never expressly admitted that their behavior was motivated by financial gain, in a case where their legal fee would be determined by the amount they were able to recover for their client, it is clear that respondents engaged in the misconduct alleged and to which they admitted for financial gain and with venal intent.

Like in *Matter of Pu*, respondents here, to the extent they filed pleadings falsely listing the situs of their client's accident, also misrepresented facts to a court (*Matter of Pu* at 58). However, unlike the respondent in that case, respondents here did not make any false statements in open court. Accordingly, something less than the one-year suspension we imposed in *Matter of Pu* is warranted. We agree with the Committee that insofar as respondents perpetrated this fraud for a protracted period, spanning more than a year, a more severe sanction than

the six-month suspension that we imposed in *Matter of Vasquez* is warranted since in that case, the attorney's misconduct consisted of two acts, both which were committed at or about the same time (*Matter of Vasquez* at 18). Furthermore, since respondents' misconduct harmed the party whom, through their influence, their client wrongfully sued, the appropriate sanction is certainly more than the three-month suspension we imposed in *Matter of Becker*, where the attorney's misrepresentation did not harm anyone (*Matter of Becker* at 33-35).

Based on the foregoing, despite the evidence presented by respondents in mitigation, we agree with the Panel that a nine-month suspension is warranted.

Accordingly, the Committee's motion for an order confirming the Hearing Panel's findings and conclusions should be granted and respondents should be suspended from the practice of law for a period of nine months, and respondents' cross motion should be granted to the extent it seeks to confirm the Hearing Panel's finding on liability, and otherwise denied to the extent it seeks to disaffirm the Hearing Panel's recommended sanction.

GONZALEZ, P.J., SAXE, MANZANET-DANIELS, ROMÁN and CLARK, JJ., concur.

Respondents suspended from the practice of law in the State of New York for nine months, effective June 13, 2013 and until further order of this Court.