[22 NYS3d 57]

In the Matter of MICHAEL BENENATI, an Attorney, Respondent.
DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST
JUDICIAL DEPARTMENT, Petitioner.

First Department, December 29, 2015

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Emery Celli Brinckerhoff & Abady, LLP* (*Hal R. Lieberman* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Michael P. Benenati was admitted to the practice of law in the State of New York by the First Judicial Department on August 4, 1997. During the period at issue, respondent was employed with a law firm in Westchester County, and he also had a side law practice for which he maintained an office within the First Department.

In 2004, respondent joined a Westchester County law firm as an associate and, in 2009, became a partner. From the outset, almost all of his work was derived from one partner. In July 2011, that partner left the firm, taking with him most of the cases on which respondent was working at the time.

Respondent's work for the firm was primarily in the area of insurance defense, and he consistently billed between 2,600 and 3,000 hours each year. With the partner's departure, respondent's workflow and billable hours decreased dramatically, so that by 2012, respondent was billing only approximately one to two hours per day.

Given his firm's unresponsiveness to his efforts to increase his productivity, respondent, unbeknownst to his firm, started a solo practice focused on the type of plaintiffs' personal injury work which the firm had stated it was not interested in pursuing. He retained the clients in his individual capacity, used his own name, used his home address, and used his home telephone number and personal email address. Respondent estimates that he spent no more than 1½ hours at his firm working on his side personal injury cases and, except for an occasional scanning of a document to his personal email account from his firm email account, he did not use *any* firm resources for his personal injury practice. Respondent stated that his side practice did not in any way interfere with the little work he was doing for his firm.

Respondent did not disclose his side private practice to the law firm because he felt that his employment with the firm

was tenuous, and he did not want to "ruffle any feathers." Further, he did not believe that, under the circumstances, his maintaining a small side practice was wrong because such activity was *not* specifically precluded by his partnership agreement; and, to his knowledge, two or three other partners had side practices.

In addition, around May 2012, his administrative assistant told him she had lost her notary stamp and asked if he had seen it. At that time he had not, but subsequently he either found it in his office or outside his office at a work station. Respondent then took the stamp, put it in his office and, sometime in June, used it, without the permission or authority of his administrative assistant, to notarize five HIPAA releases which his clients had signed. Respondent notarized the signatures of his clients, signed the administrative assistant's name to the releases to make it appear as if she had actually notarized them, and forwarded them to medical providers.

In 2014, the Departmental Disciplinary Committee (Committee) brought four charges against respondent alleging that he maintained a surreptitious side law practice while a partner with the law firm without the firm's knowledge or consent in violation of rule 8.4 (h) of the Rules of Professional Conduct (22 NYCRR 1200.0) (other conduct that adversely reflects on fitness as a lawyer) (charge one); misappropriated and misused a notary stamp which belonged to his administrative assistant, and forged her signature in connection with his side law practice in violation of rule 8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepresentation) (charges two and three); and, based on his overall conduct, violated rule 8.4 (h) (charge four). In his answer, respondent asserted as an affirmative defense that his side law practice consisted of several matters that his firm was unwilling to handle, which he undertook during the period leading up to his termination; and thus, under the circumstances, there was no breach of fiduciary duty nor disciplinary violation on his part. Also, in his answer, and by subsequent stipulation, respondent admitted most of the material facts alleged by the Committee and admitted charges two, three, and four, but denied charge one.

A hearing on the charges was convened before a Referee. Since respondent had admitted charges two through four, the hearing primarily focused on charge one. The Referee issued a report sustaining all four charges.

The Referee then convened a sanction hearing at which respondent testified on his own behalf, called three character

witnesses, and submitted a character affidavit. Respondent stated that, at the time of his misconduct, he suffered from severe emotional stress related to a recent medical diagnosis, his precarious position at the firm and the firm's antagonistic attitude towards him. Respondent acknowledged that he wrongfully misappropriated and misused his assistant's notary stamp, and expressed remorse.

The Referee found that respondent's misconduct was mitigated by: (1) no prior disciplinary history; (2) his cooperation with the Committee; (3) his remorse; and (4) the fact that respondent started his law practice because he believed that he was in a precarious position with respect to his future economic livelihood. The Referee recommended in a report that respondent be suspended for three months.

On March 17, 2015, a Hearing Panel heard oral argument. As to charge one, the Panel found that: the nature, magnitude, circumstances, and duration of respondent's side practice were distinguishable from those in *Matter of Gonchar* (118 AD3d 1 [1st Dept 2014]), the law firm's *unwritten* policy regarding a side law practice was not that clear; respondent's testimony that certain partners maintained side practices was not refuted; and what other partners knew or did not know with respect to the other attorneys' work as town attorneys, or tolerated, was unclear.

Further, the Panel found that respondent's *limited* side practice was confined to matters which were admittedly of no interest to his firm; there was no evidence that his outside practice interfered with his ability or willingness to meet his responsibilities to his firm; and his side practice was geared to help him transition out of his firm, which failed to provide him with the work he eagerly sought.

In a report dated May 29, 2015, the Hearing Panel confirmed the Referee's liability findings sustaining charges two through four, which respondent had admitted; reversed the Referee's liability finding as to charge one and did not sustain this charge; disaffirmed the Referee's sanction recommendation of a three-month suspension; and recommended that respondent be suspended for six months.

Now, by petition dated August 25, 2015, the Committee moves, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) §§ 603.4 (d) and 605.15 (e) (1) and (2), for an order confirming the Hearing Panel's liability findings sustaining charges two through four and its recommendation

of a six-month suspension; and requests that this Court determine respondent's liability as to charge one as it deems appropriate. In response, respondent requests that this Court confirm the Hearing Panel's liability finding as to charge one; and modify the Hearing Panel's recommendation of a six-month suspension by instead imposing a sanction no greater than a public censure.

The Hearing Panel's liability findings are amply supported by the record, which includes respondent's admission of charges two through four. The Hearing Panel's decision not to sustain charge one was correct because respondent's partnership agreement did *not* address the issue of a side practice; the record is not clear as to what other partners were aware of as to the permissibility of a side practice; at least two other partners maintained side practices; there is no evidence that respondent's duties to his firm were compromised by his side practice; and his side practice was in direct response to his firm's unwillingness to let him take steps to increase his productivity.

As to sanction, similar type misconduct has resulted in suspensions ranging from three months to three years (*see e.g. Matter of Gonchar*, 118 AD3d at 1 [nine-month suspension for maintaining a side law practice for approximately 11 years without firm's knowledge and, even though no written policy on issue, respondent fully aware of firm's expectation of any client fees collected were to be turned over to firm; and for failing to declare income earned from side practice to tax authorities; several mitigating factors]; *Matter of Andrion*, 88 AD3d 62 [1st Dept 2011] [three-year suspension for forging wife's signature on two power of attorney (PA) forms without her knowledge or permission; misappropriating the notary stamps of two work colleagues and using them to notarize the PA forms; forging notary signatures on the PA forms; filing the PA forms with the county clerk's office; using the forged PA forms to obtain mortgages on his and his wife's jointly owned marital home; and forging his wife's name to mortgage documents which he caused to be filed with the county clerk's office]; *Matter of Posner*, 86 AD3d 103 [1st Dept 2011] [one-year suspension for, inter alia, forging the signature of a client, with whom the respondent had lost contact, and then notarizing the forged signature on two releases which were filed with the court to obtain a settlement in a personal injury case; mitigation included a 27-year unblemished disciplinary history, finding that actions were not motivated by self interest, and personal

issues and concern for client contributed to misconduct]; *Matter of Gotbetter*, 19 AD3d 1 [1st Dept 2005] [three-month suspension for signing deceased mother's name to a form accepting an offer to purchase stock and commencing suit in her name; mitigation included 50-year unblemished legal career and fact that misconduct did not involve a client]; *Matter of Vasquez*, 1 AD3d 16 [1st Dept 2003] [six-month suspension for misdemeanor conviction arising from falsifying the signature of a city official on a memorandum appearing to authorize a salary increase for respondent; substantial mitigation, including aberrational nature of misconduct, unblemished disciplinary history, cooperation with authorities, and sincere remorse]; *Matter of Chazan*, 252 AD2d 323 [1st Dept 1999] [three-month suspension for forging client's signature, falsely notarizing the forgery, submitting the document to a government agency, and attempting to adduce false testimony from client; significant mitigation]; *Matter of Glotzer*, 191 AD2d 112 [1st Dept 1993] [six-month suspension for submitting a forged document with the court and falsely swearing at a deposition before the Committee that the client's signature was genuine and made in the respondent's presence]).

As the above cases illustrate, sanction determination in cases involving forgery related misconduct is very fact dependent. While respondent's misconduct was serious, deliberate, and dishonest, there is mitigation in that, inter alia: respondent has no prior disciplinary history; he cooperated with the Committee; his misconduct was motivated by the precariousness of his employment with his former firm, as opposed to greed; and his firm frustrated his efforts to increase his productivity. Further, the Referee, who had the opportunity to observe respondent's demeanor during his testimony, found his remorse credible; and, thus, such finding is entitled to deference. A three-month suspension acknowledges the seriousness of respondent's misconduct, and at the same time takes into account the mitigation.

Accordingly, the Committee's motion should be granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law sustaining charges two through four, the sanction recommendation is disaffirmed, and respondent is suspended from the practice of law in the State of New York for a period of three months, and until further order of this Court.

GONZALEZ, P.J., SWEENY, ACOSTA, MANZANET-DANIELS and KAPNICK, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of three months, effective January 27, 2016, and until further order of this Court.