OPINION OF THE COURT
 

 Titone, J.
 

 Defendant, a psychiatrist, was found guilty, after trial, of 10 separate counts of criminal sale of a prescription for a controlled substance (Penal Law § 220.65). The primary issue in this appeal is whether the People’s failure to disclose a witness’s pretrial statements within the time prescribed by CPL 240.45 requires reversal of the conviction on all 10 counts even though the witness gave evidence pertaining to only two. Rejecting any notion that the
 
 Rosario
 
 per se rule of reversal automatically and necessarily extends to all counts that were simultaneously tried, we conclude that the
 
 Rosario
 
 violation here vitiates the convictions only on the two discrete counts as to which the witness in question gave testimony.
 

 The charges against defendant arose out of a series of visits to his Manhattan office by four individuals posing as "patients.” Three of these visitors, James Dawson, Ruth Kirton and Barbara Williams, were "shoppers” employed by the Special Prosecutor for Medicaid Fraud Control. The fourth, Ken Karp, was an investigator with the New York State Bureau of Controlled Substances (BCS).
 

 The witnesses told similar tales regarding their visits to defendant’s office. Upon arriving, these "patients” would generally initially "register” with one of defendant’s receptionists, "Richie” Pearce or Michelle Rosario, and hand over a cash "fee” of $80 or $90, along with some photo identification and a Medicaid card. The "patient’s” file and cash payment were then taken to defendant, and defendant would conduct a brief "session” lasting no more than 5 or 10 minutes. First-time "patients” would first be asked for a medical history. The remainder of the "session” would consist of a discussion of
 
 *529
 
 what controlled substance the "patient” wanted. Typically, there would be no discussion of the "patient’s” medical complaints or psychiatric symptoms. Beginning in late 1990, "sessions” between defendant and his "patients” were conducted through a plexiglass partition with the use of a telephone. At the close of these "sessions,” defendant would give the "patient” a prescription for the agreed-upon substances.
 

 On more than one occasion, the "shopper” Dawson presented two or more Medicaid cards under different names, and defendant agreed to write separate prescriptions for each name. According to the testimony of both receptionists, the "fee” charged for such visits was determined on a per card basis. Michelle Rosario testified, for example, that the fee was a fixed amount for prescriptions under each card, so that if the "going” fee at the time was $100 and the "patient” presented three Medicaid cards, the total price would be $300. During one visit, defendant told a "patient” that his price had increased because the number of controlled substance prescription forms that he was authorized to issue had been limited.
 

 Following a bench trial at which defendant represented himself with the assistance of standby counsel, defendant was convicted of 10 counts of criminal sale of a prescription for a controlled substance in violation of Penal Law § 220.65. Eight of those counts concerned sales made to the three "shoppers” employed by the Special Prosecutor’s office. The remaining two concerned sales made to Ken Karp, the BCS investigator, during his two visits on March 12 and May 22, 1990.
 

 After sentence was imposed, defendant’s newly retained attorney learned through a colleague that Karp, who was also involved in an investigation of a different doctor, had discussed his March 12, 1990 visit to defendant’s office in that other physician’s waiting room in a conversation that had been memorialized on tape. Specifically, Karp had been recorded telling the other physician’s receptionist that defendant’s office was closed, that "[the] place is crazy,” that defendant’s "worker [receptionist] wasn’t there last time,” that he (Karp) was afraid to go back because he "heard that story about [defendant] getting ripped off.” In a second previously undisclosed tape, it was revealed that Karp had made a third visit to defendant’s office which had not been mentioned in his testimony, but that he had been turned away without
 
 *530
 
 seeing defendant because defendant had depleted his supply of rationed prescription forms.
 
 [1]
 

 Citing these tape recorded statements, defendant moved under CPL 440.10 to set aside the judgment of conviction on the ground that his rights under CPL 240.45 had been violated by the nondisclosure of these pretrial statements made by an individual who had appeared as a prosecution witness at his trial. The trial court granted the requested relief and vacated the convictions on all 10 of the counts. While agreeing with the prosecution that
 
 Rosario
 
 violations do not always require the reversal of all jointly tried counts, the court concluded that the violation here had tainted all of the convictions because the prosecutor had argued that all of the evidence should be considered as a whole to establish the absence of good faith on defendant’s part
 
 (see,
 
 Penal Law § 220.65).
 

 On the People’s appeal from this decision, the Appellate Division modified by reinstating the conviction on the eight counts that were not directly predicated on investigator Karp’s testimony. The Court stated that there might be cases in which an argument such as that made by the prosecutor here might warrant reversal of all counts for a
 
 Rosario
 
 violation pertaining only to some. Here, however, reversal of all of the counts was not required because the tainted counts did not represent "a substantial proportion of the total evidence on a disputed issue” (199 AD2d 36, 40). In a separate order disposing of defendant’s direct appeal from the judgment of conviction, the Appellate Division affirmed the judgment of conviction, as modified in the CPL 440.10 proceeding. Having obtained the permission of a Judge of this Court, defendant has appealed from both Appellate Division orders.
 

 With regard to defendant’s
 
 Rosario
 
 claim, it is undisputed that the undisclosed tape recorded material included statements by a trial witness about his criminal transactions with defendant and that, accordingly, the material was subject to disclosure under CPL 240.45. It is also undisputed that the People’s failure to turn the material over to the defense constituted a violation of defendant’s Rosario
 
 [2]
 
 rights and that this violation required reversal of the two convictions for selling prescriptions to that witness without regard to case-
 
 *531
 
 specific harmless-error analysis
 
 (see, e.g., People v Banch,
 
 80 NY2d 610;
 
 People v Jones,
 
 70 NY2d 547).
 
 [3]
 
 Thus, the only remaining issue before us is whether the prosecution’s failure to disclose investigator Karp’s taped pretrial statements also taints the eight convictions on the counts for which Karp gave no testimony.
 

 Initially, we note that nothing in our per se rule of reversal for
 
 Rosario
 
 error compels automatic reversal of all counts that happened to be tried jointly with the counts to which the undisclosed
 
 Rosario
 
 material pertained
 
 (see generally, People v Kanefsky,
 
 50 NY2d 162). The
 
 Rosario
 
 rule itself is simply one of fundamental fairness
 
 (see, e.g., People v Banch, supra,
 
 at 615). Similarly, the corollary rule requiring reversal without regard to harmless-error analysis is premised on the pragmatic recognition that traditional harmless-error inquiry "would necessarily require weighing the potential impeachment value of the withheld material” — an exercise best left to the single-minded devotion of counsel for the accused
 
 (People v Banch, supra,
 
 at 615;
 
 People v Perez,
 
 65 NY2d 154, 160;
 
 see, People v Novoa,
 
 70 NY2d 490, 499).
 

 These postulates have persuaded this Court to dispense with considering actual prejudice where a witness whose pretrial statement has been improperly withheld has given evidence probative of a particular charged crime. However, they need not be extended to situations where the defendant has also been convicted of other charges that are unrelated to that crime. Indeed, in those situations, the handicap visited on the defense as a result of the nondisclosure cannot reasonably or logically be said to have had any impact at all on the manner in which the unrelated charges were litigated. Hence, extension of the per se reversal rule to convictions on the unrelated charges would be an unwarranted expansion of what was essentially "a policy decision” into an area in which that policy choice has no meaningful application
 
 (see, People v Jackson, supra,
 
 at 641, 645).
 

 The foregoing explains our refusal to adopt a reflexive rule requiring reversal of all jointly tried counts regardless of their relationship to the counts to which the
 
 Rosario
 
 violation pertained. However, it does not wholly dispose of the remedy
 
 *532
 
 question presented here. As an alternative approach, defendant contends that we should reverse the jointly tried counts in his case because the two tainted counts may have had a "spillover” effect arising from the prosecutor’s summation argument that the evidence of each sale had a "cumulative value” for rebutting any claim of mistake or coincidence
 
 (see, e.g., People v Brown,
 
 83 NY2d 791;
 
 People v Kelly,
 
 76 NY2d 1013). We reject defendant’s argument as unpersuasive under the particular facts presented here.
 

 Whether an error in the proceedings relating to one count requires reversal of convictions on other jointly tried counts is a question that can only be resolved on a case-by-case basis, with due regard for the individual facts of the case, the nature of the error and its potential for prejudicial impact on the over-all outcome. Here, defendant was convicted of 10 counts of having unlawfully sold prescriptions for controlled substances "other than in good faith in the course of his professional practice” (Penal Law § 220.65). Each count involved a discrete and separate sale conducted in the presence of a single buyer-witness and each buyer-witness gave evidence that directly related only to the sales made to him or her.
 
 [4]
 
 The error in question — a violation of defendant’s
 
 Rosario
 
 rights — may have had some impact on his ability to defend against the two counts involving the sales to investigator Karp, but its potential effect on the counts involving Dawson, Kirton and Williams is considerably more difficult to pinpoint. The only real disputed issue on all of the counts was whether defendant had issued the prescriptions in the good-faith pursuit of his profession. On this point, the evidence on each of the 10 counts may have had some tangential effect on the others, since, as the prosecutor argued, "the mass [of evidence] has a cumulative value” and "repetition [of the conduct] reduces the likelihood of mistake.” However, in view of the number of counts, the relative uniformity of the evidence pertinent to each and the strength of the independent proof bearing on defendant’s culpable mental state, there was no reasonable possibility that the evidence supporting the two tainted counts influenced the guilty verdicts on the other eight.
 

 In this regard, it is noteworthy that, apart from the ex
 
 *533
 
 tremely weak linkage supplied by the repetition factor, the counts were not "factually related” in any meaningful way
 
 (see, People Kelly, supra,
 
 at 1015;
 
 People v Cohen,
 
 50 NY2d 908, 911). Further, the sales to investigator Karp did not figure prominently in the prosecution’s "cumulative value” argument. On the contrary, after making some general assertions about the need to "consider the facts surrounding the issuance of all [of] the prescriptions in this case,” the prosecutor argued that "the first throws light upon the last[,] * * * the last throws light upon the first[, a]nd the last prescription in this case * * * [, which was issued to James Dawson,] we submit
 
 [throws] considerable light upon all the others”
 
 (emphasis supplied). Thus, to the extent that the People urged the fact finder to use evidence of some counts as support for others, the emphasis was on the counts concerning the sales to James Dawson, not the sales to investigator Karp. Under these circumstances, reversal of the eight counts on which Karp did not testify is not required.
 

 Defendant’s remaining argument regarding a purported deprivation of his right to effective assistance of counsel requires only brief mention. Defendant’s complaint about the assistance he received concerns the decision to call an expert whom he characterizes as "unqualified” and who ultimately gave testimony that could be construed as more damaging than helpful to the defense. The short answer to defendant’s grievance is that, having voluntarily and intelligently undertaken to represent himself, defendant cannot now complain about the quality of the decisions made in the conduct of his defense. As was noted in somewhat different context, "[t]here comes a point where a defendant must bear the consequences of his conduct, in a courtroom as well as out of it”
 
 (People v Kelly,
 
 60 AD2d 220, 224,
 
 affd on opn of Silverman, J.
 
 44 NY2d 725, quoted in
 
 People v Smith,
 
 68 NY2d 737, 743).
 

 To be sure, defendant had the assistance of standby counsel and standby counsel, in fact, argued for the admission of the expert witness’s evidence and conducted his examination. Nonetheless, given the limited role ordinarily played by standby counsel
 
 (see, McKaskle v Wiggins,
 
 465 US 168, 174;
 
 People v Rosen,
 
 81 NY2d 237, 244-245;
 
 cf., People v Cabassa,
 
 79 NY2d 722, 731;
 
 see also, People v Mirenda,
 
 57 NY2d 261), it must be assumed in the absence of contrary evidence that defendant was the one who made the critical strategic decisions, including the decision to call the purported expert. We note that the absence of any meaningful evidence regarding
 
 *534
 
 the standby’s role in that decision makes it unnecessary for us to decide the extent to which incompetent assistance by standby counsel could, in a proper case, support a valid ineffective assistance of counsel claim.
 

 Accordingly, the orders of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Orders affirmed.
 

 [1]
 

 . Karp had testified at defendant’s trial that his March 12 and May 22 visits were "the only two dates [he had] visited with Dr. Kermani.”
 

 [2]
 

 .
 
 See, People v Rosario,
 
 9 NY2d 286,
 
 cert denied
 
 368 US 866.
 

 [3]
 

 . Defendant made his
 
 Rosario
 
 claim the subject of his direct appeal as well as of his CPL 440.10 motion. Consequently, the People have not argued for the application of the prejudice test that is applicable to
 
 Rosario
 
 claims asserted only after direct appeal has been exhausted
 
 (see, People v Jackson,
 
 78 NY2d 638, 649).
 

 [4]
 

 . The prosecution’s case was also supported by the testimony of defendant’s two receptionists, who provided additional information about his
 
 modus operandi.