*502
 
 OPINION OF THE COURT
 

 Ciparick, J.
 

 Defendant was convicted, after a jury trial, of a total of 21 counts of criminal sale of a controlled substance, criminal sale of a prescription for a controlled substance, criminal possession of a controlled substance and failure to label a prescription drug. The convictions under four of those counts were
 
 *503
 
 subsequently vacated, due to an erroneous jury charge. The primary issue presented on this appeal is whether the erroneous charge as to those counts had a prejudicial “spillover effect” on the remaining counts, requiring reversal of those convictions as well. As there is no reasonable possibility that the Trial Judge’s erroneous charge or the evidence supporting the four tainted counts in any meaningful way influenced the jury's decision to convict on the remaining counts, we hold that reversal is not warranted.
 

 During the early 1990’s, defendant was engaged in the practice of general psychiatry at two offices in downtown Manhattan. During this period, defendant maintained a large quantity of controlled substances in his offices and wrote an unusually high number of prescriptions for controlled substances. One of defendant’s patients was Sara Cordova, a former methadone addict with a record of arrests and criminal convictions dating back to the 1960’s. Arrested again in January 1994 for selling drugs, Cordova offered to serve as a police informant in exchange for dismissal of the charges pending against her. Cordova maintained that since the mid-1980’s, she had been purchasing, in her own name and under an alias, controlled substances and prescriptions for various controlled substances from defendant. She further claimed that defendant knew that she resold those pills on the street.
 

 In March 1994, Cordova began working as an undercover agent for the Attorney General’s Medicaid Fraud Control Unit, under the supervision of Special Investigator Thomas Creel-man. Cordova visited defendant’s office three times in March 1994 and once in July 1994. Creelman, posing as a recreational drug user named “Dan Sullivan,” visited defendant’s office twice, once in March and once in July. On five of these six visits, Creelman and Cordova were equipped with hidden tape recorders. The transcripts of their meetings with defendant indicate that defendant repeatedly sold Cordova a variety of controlled substances and prescriptions for controlled substances, including lorazepam in 2.5 milligram strength, knowing that Cordova intended to resell the pills. Defendant also sold Creelman controlled substances and prescriptions for controlled substances, with knowledge that Creelman was an addict who intended to use the drugs recreationally.
 

 The core of the defense was that defendant’s actions in selling and prescribing controlled substances to Cordova and Creelman had been undertaken in the good-faith practice of psychiatry. The jury rejected these arguments, and convicted
 
 *504
 
 defendant of three counts of criminal sale of a prescription for a controlled substance (Penal Law § 220.65), five counts of criminal sale of a controlled substance in the fifth degree (Penal Law § 220.31), five counts of criminal possession of a controlled substance in the fifth degree (Penal Law § 220.06) and eight counts of failure to label a prescription drug (Education Law § 6811). Four of these counts pertained to criminal sale and criminal possession of lorazepam 2.5 mg; as to these counts, the trial court had charged the jury that defendant’s good faith was irrelevant. The jury voted to acquit, however, on five other counts, all felonies, including one class B felony count, criminal possession of a controlled substance in the third degree (Penal Law § 220.16).
 

 Defendant thereafter moved to vacate judgment pursuant to CPL 440.10, arguing that the People had violated their
 
 Brady
 
 obligations (see,
 
 Brady v Maryland,
 
 373 US 83; CPL 240.20 [1] [h]; 240.60) by failing to turn over certain Medicaid records relating to “patient visits” by Cordova in the two years preceding the indictment. Supreme Court denied the motion, finding that defendant had himself recently possessed copies of these records, and could through due diligence have procured copies in advance of trial.
 

 Defendant appealed from Supreme Court’s denial of the CPL 440.10 motion and from the judgment of conviction. The Appellate Division affirmed the denial of defendant’s motion to vacate, but vacated the four counts of the judgment relating to lorazepam 2.5 mg. The Appellate Division reasoned that Supreme Court had erred by essentially directing a guilty verdict on these four counts by charging the jury that defendant’s good faith in possessing and selling lorazepam 2.5 mg was irrelevant. Defendant appeals pursuant to leave granted by a Judge of this Court, and we now affirm.
 

 The People concede that the trial court committed reversible error by essentially directing the jury to deliver guilty verdicts on the four counts relating to possession and sale of lorazepam 2.5 mg. Defendant argues that this error irremediably tainted the judgment of conviction on the remaining counts, and compels their reversal as well.
 

 In
 
 People v Baghai-Kermani
 
 (84 NY2d 525), we articulated the factors to be considered in review of so-called “spillover errors.” In that case, we noted:
 

 “Whether an error in the proceedings relating to one count requires reversal of convictions on other
 
 *505
 
 jointly tried counts is a question that can only be resolved on a case-by-case basis, with due regard for the individual facts of the case, the nature of the error and its potential for prejudicial impact on the over-all outcome”
 
 (id.,
 
 at 532).
 

 Baghai-Kermani
 
 involved
 
 Rosario
 
 violations with respect to pre-trial statements of a witness who gave evidence pertaining to two of 10 counts. We held that, because the witness’ statements were not material to the remaining jointly tried counts, there was no prejudicial spillover effect, and no reversal of the other counts was required. The focus of our analysis there was thus on the evidentiary relationship between the tainted and non-tainted counts.
 

 The instant case thus ostensibly differs from
 
 Baghai-Kermani,
 
 as here the error underlying the tainted counts stems not from any lapses by the People, but rather from the Trial Judge’s mistaken instruction to the jury. The primary focus here must rest on any effect which the Trial Judge’s erroneous charge might have had on the jury’s ability to deliberate fairly on the non-tainted counts, although attention must of course be paid as well to the evidentiary relationship between the tainted counts and the non-tainted counts. Notwithstanding these distinctions, we find the essential analytical principles enunciated in
 
 Baghai-Kermani
 
 to be equally applicable here (see,
 
 People v Bracetty,
 
 216 AD2d 479, 480), and would extend the principles enunciated to the matter before us.
 

 As articulated in
 
 Baghai-Kermani,
 
 the paramount consideration in assessing potential spillover error is whether there is a “reasonable possibility” that the jury’s decision to convict on the tainted counts influenced its guilty verdict on the remaining counts in a “meaningful way”
 
 (id.,
 
 at 532-533). If so, then the spillover effect of the tainted counts requires reversal on the remaining charges. By contrast, where the jury’s decision to convict on the tainted counts had only a “tangential effect” on its decision to convict on the remaining counts, no reversal is warranted
 
 (People v Baghai-Kermani, supra,
 
 84 NY2d, at 532).
 

 Applying these principles, we find that here the tainted counts are readily distinguishable from the remaining counts upon which defendant was convicted. As erroneously charged by the trial court, the lorazepam 2.5 mg counts imposed criminal liability upon defendant for the mere acts of possession and sale of the drug, without regard to whether defendant was acting in the “good faith” practice of psychiatry (Public Health
 
 *506
 
 Law § 3331 [2]; § 3332 [1]). Also, the trial court, in instructing the jury, specifically distinguished lorazepam 2.5 mg from the other substances. As to the charges relating to the other controlled substances, the trial court correctly instructed the jury that the People bore the burden of proving that defendant had not acted in “good faith.” Thus, the jury’s decision to convict on the lorazepam 2.5 mg counts, predicated on the fact of possession and sale without regard to “good faith,” could not have had more than a tangential effect on its decision to convict on the remaining counts, all of which required a showing by the People of absence of “good faith.” Finally, defendant’s argument of prejudicial spillover effect on the non-tainted counts is belied by the fact that the jury actually voted to acquit on five of the remaining counts, including an acquittal on the highest charge before it, criminal possession of a controlled substance in the third degree, a class B felony.
 

 Defendant next argues that the People’s failure to turn over certain Medicaid records in its possession — specifically, Medicaid Management Information Systems (MMIS) remittance statements indicating that defendant over the two years preceding his indictment had billed Medicaid for psychiatric services rendered to Cordova — constituted a violation of the People’s disclosure obligations under
 
 Brady v Maryland
 
 (373 US 83,
 
 supra)
 
 and progeny
 
 (see,
 
 CPL 240.20 [1] [h]; 240.60). Cordova’s status as a bona fide patient was hotly disputed and important to defendant’s argument that he had acted all along in the good-faith practice of psychiatry. This argument is without merit.
 

 The
 
 Brady
 
 doctrine requires prosecutors to turn over material exculpatory to defendants
 
 (see, e.g., People v Vilardi,
 
 76 NY2d 67).
 
 Brady
 
 does not, however, require prosecutors to supply a defendant with evidence when the defendant knew of, or should reasonably have known of, the evidence and its exculpatory nature
 
 (see, United States v LeRoy,
 
 687 F2d 610, 618 [2d Cir]). Here, the billing statements were essentially generated by defendant himself, inasmuch as they stemmed from his submitted claims to Medicaid for psychiatric services allegedly rendered to Cordova. Moreover, defendant does not appear to have disputed the People’s assertion that defendant received a copy of every MMIS remittance statement along with every Medicaid payment for services billed by him. Thus, affirming the trial court, the Appellate Division here found that “the existence of the Medicaid payment records was necessarily known to defendant by virtue of his having billed
 
 *507
 
 Medicaid and received payment”
 
 (People v Doshi,
 
 250 AD2d 431, 433). The People have no obligation to disclose documents which defendant knew about and could have himself procured by maintaining orderly business records
 
 (see, United States v LeRoy,
 
 687 F2d 610,
 
 supra; see also,
 
 CPL 440.10 [1];
 
 People v Quinones,
 
 228 AD2d 796, 798).
 

 Defendant’s remaining contentions are either unpreserved or without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Wesley and Rosenblatt concur.
 

 Order affirmed.