THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN P. DALY, Appellant. [870 NYS2d 116]—

The defendant was charged in a single indictment with, inter alia, robbery and assault in connection with an incident at an off-track betting corporation (hereinafter OTB) site on January 14, 2001, and with attempted robbery and assault in connection with a separate incident at a Mobil gas station on February 26, 2001. In connection with the OTB incident, he was found guilty

of six counts of robbery in the first degree and one count of assault in the first degree. We find that the defendant, on his CPL 440.10 motion, established his entitlement to vacatur of those convictions rendered in connection with the OTB incident, and for a new trial on those counts, based upon the People's failure to turn over certain witness statements, in violation of *People v Rosario* (9 NY2d 286 [1961], *cert denied* 368 US 866 [1961]) and *Brady v Maryland* (373 US 83 [1963]), and the reasonable possibility that the failure to turn over such evidence may have contributed to the verdict of guilt on those counts.

The defense theory of the case, insofar as the OTB incident was concerned, was that the defendant was misidentified as the perpetrator of the robbery. His defense to the counts concerning the robbery of the Mobil gas station was that those crimes were committed by his tenant, who looked very similar to him. In support of his CPL 440.10 motion, the defendant submitted certain witness statements, which had not been turned over to the defense before the trial, wherein the perpetrator of the robbery of the OTB was described, and the descriptions did not match the defendant's appearance.

One of the statements in question was included in certain notes memorialized during an interview with witness Peter Shank on January 16, 2001. The People turned over a signed statement by Peter Shank, dated February 1, 2001, wherein he described the perpetrator of the OTB robbery as a white male, approximately 6'1" tall, between 175 and 190 pounds, with a slim build, and a long thin face and olive complexion. In the notes from the earlier interview conducted on January 16, 2001, which were concededly not turned over to the defense, Peter Shank described the perpetrator somewhat differently. Peter Shank testified at the trial describing the perpetrator as "6 feet 1 inch . . . close to maybe 190 in weight, maybe a little less, he had like *not a dark complexion*, but like an olive complexion . . . like an oval type, his face" (emphasis added).

Another witness, Terry Rogers, who did not testify at trial, gave a statement to police which was not turned over to the defense, in which she described the perpetrator of the OTB robbery as "dark skin Italin [*sic*] looking male approximately 5'10"[*sic*], athletic build, 160 lbs, long brown hair." Other witness statements which were also not turned over to the defense, gave less detailed descriptions of the perpetrator which were partially consistent with the defendant's appearance, and partially inconsistent with it.

*Rosario* requires the People, prior to their opening statement, to turn over to the defense any written or recorded statement of

a person whom the People intend to call as a witness at the trial (*see* CPL 240.45 [1] [a]). The failure to do so does not constitute grounds to vacate a judgment of conviction unless "there is a reasonable possibility that the non-disclosure materially contributed to the result of the trial" (CPL 240.75; *People v Jackson*, 78 NY2d 638 [1991]).

Here, only the statement of Peter Shank qualifies as *Rosario* material, as none of the other witnesses whose statements were undisclosed testified at the trial. While acknowledging that they were obligated to turn over to the defense the notes of the interview with Peter Shank conducted on January 16, 2001, the People nevertheless contend that reversal is not warranted because they did turn over Peter Shank's February 1, 2001 statement, and that statement contained information substantially similar to the information contained in the January 16, 2001 notes. However, the January 16, 2001 notes are not the duplicative equivalent of the February 1, 2001 statement, as there are significant variations between the two. Statements will not be considered duplicative equivalents of one another merely because they are harmonious or consistent (*see People v Ranghelle*, 69 NY2d 56 [1986]). In this case, while the undisclosed notes of the interview with Peter Shank are not totally inconsistent with his disclosed statement, the undisclosed notes contain additional details missing from the disclosed statement, specifically, the description of the perpetrator as "dark complexion-tanned Italian."

This detail of the description of the perpetrator in the undisclosed notes of the interview with Peter Shank, not only was not part of his disclosed statement, but it closely mirrors part of the description of the perpetrator contained in the undisclosed witness statement of Terry Rogers, which constitutes *Brady* material. Considering these statements together, and the fact that both of these witnesses described the perpetrator as a dark-complected Italian, which is significantly variant from the defendant's actual appearance, we cannot conclude that the failure to turn over the notes of the January 16, 2001, interview with Peter Shank did not contribute to the verdict herein. It is clear that, had the defense known that two separate witnesses described the perpetrator as a dark-skinned Italian, it would have used this information to bolster the theory that the defendant was misidentified as the perpetrator of the OTB robbery.

Moreover, *Brady* requires the People to turn over any material to the defense that is favorable to the defense, and entitles a defendant to a new trial where such material was not disclosed and the defendant was thereby prejudiced (*see People v LaValle*,

3 NY3d 88 [2004]). Furthermore, "[w]here the defense itself has provided specific notice of its interest in particular material, heightened, rather than lessened prosecutorial care is appropriate" (*People v Vilardi*, 76 NY2d 67, 77 [1990]). Thus, where a specific discovery request has been made for evidence, putting the People in notice that the defense considered the material important, the standard is whether there is "a 'reasonable possibility' that the failure to disclose the exculpatory report contributed to the verdict" (*People v Vilardi*, 76 NY2d 67, 77 [1990]).

We note that the defense specifically requested to be provided with material in the People's possession with "any description of the robber at either place as given by any witness or victim, if those descriptions are not consonant with the appearance of" the defendant. The statement of Terry Rogers is *Brady* material, and the People improperly failed to turn it over to the defendant.

Based on the foregoing, the defendant is entitled to a new trial on counts one through six and count eight of the indictment, all of which related to the robbery of the OTB. We reject the defendant's argument that there was a prejudicial "spillover effect" which warrants reversal of the convictions stemming from the Mobil gas station robbery. The undisclosed material pertained solely to the OTB robbery and the incidents were not factually related (*see People v Baghai-Kermani*, 84 NY2d 525 [1994]; *People v Clarke*, 7 AD3d 537 [2004]). Lifson, J.P., Santucci, Balkin and Belen, JJ., concur.