People v Casatelli (2022 NY Slip Op 02313)

People v Casatelli

2022 NY Slip Op 02313

Decided on April 7, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 7, 2022

112060
[*1]The People of the State of New York, Respondent,
v
Franklin Casatelli, Appellant.

Calendar Date:February 10, 2022

Before:Egan Jr., J.P., Clark, Aarons, Reynolds Fitzgerald and McShan, JJ.

Tina Sodhi, Alternate Public Defender, Albany (Steven M. Sharp of counsel), for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.

Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (Breslin, J.), rendered February 5, 2018 in Albany County, upon a verdict convicting defendant of the crimes of rape in the first degree, burglary in the second degree and criminal trespass in the third degree.
Shortly before 3:00 a.m. on the morning of October 23, 2016, a man wandering around Dutch Quad on the campus of the State University of New York at Albany (hereinafter SUNY Albany) entered Ten Broeck Hall through a door opened by one of the dorm's female residents (hereinafter the resident) to retrieve a delivered pizza. The man followed the resident once they were inside and made requests to hang out, which she declined. The resident's roommate let her into their suite and closed the door before the man could follow, after which he knocked and asked if he could come in and charge his cell phone, but eventually left. The man exited the building and, at approximately 3:00 a.m., asked two female students and a male student if they would let him into their nearby dorm, which they refused to do. Within an hour of that encounter, the victim, a female student residing in Stuyvesant Tower, another dorm in Dutch Quad, awoke in her bed to find a man sexually assaulting her. After the man heeded her repeated requests that he leave, the victim contacted law enforcement.
The ensuing investigation identified defendant as the man involved in those incidents. He was charged in a five-count indictment with attempted burglary in the second degree, attempted burglary in the second degree as a sexually motivated felony and criminal trespass in the third degree relating to the Ten Broeck Hall incident, and rape in the first degree and burglary in the second degree as a sexually motivated felony relating to the Stuyvesant Tower incident. Following a jury trial, defendant was acquitted of attempted burglary in the second degree and attempted burglary in the second degree as a sexually motivated felony, and convicted of criminal trespass in the third degree, relating to the Ten Broeck Hall incident. The jury convicted defendant of rape in the first degree and burglary in the second degree as a sexually motivated felony relating to the Stuyvesant Tower incident. Supreme Court sentenced defendant, a second felony offender, to a conditional discharge for his conviction of criminal trespass in the third degree relating to the Ten Broeck Hall incident. Supreme Court further sentenced defendant to a prison term of 22 years to be followed by 25 years of postrelease supervision upon his rape in the first degree conviction and to a consecutive prison term of 15 years to be followed by 10 years of postrelease supervision upon his burglary in the second degree conviction relating to the Stuyvesant Tower incident. Defendant appeals.
To begin, the verdict was supported by legally sufficient evidence and was not against the weight of the evidence in any respect. With regard to the Ten Broeck Hall incident, "[a] person [*2]is guilty of criminal trespass in the third degree when he [or she] knowingly enters or remains unlawfully in a building or upon real property . . . which is fenced or otherwise enclosed in a manner designed to exclude intruders" (Penal Law § 140.10 [a]). The trial proof reflected that the general public is excluded from SUNY Albany dorms and that defendant, a nonstudent, did not have a swipe card that would allow him to enter any of them (see e.g. People v Barnes, 26 NY3d 986, 989 [2015]). The issue was therefore whether he knowingly entered or remained unlawfully in Ten Broeck Hall, meaning that he was "not licensed or privileged to do so" (Penal Law § 140.00 [5]). Defendant suggested that he was so privileged because the resident consented to his presence by letting him in and then talking with him (see People v Graves, 76 NY2d 16, 20 [1990]). Testimony from the resident and the delivery driver on the scene reflected that defendant was not invited in, however, and that he instead walked through the door that the resident had opened to pick up a pizza. The resident also testified that she only allowed him to do so because she believed that he was a fellow resident. Defendant thereafter followed the resident, who gave him no reason to believe that she wanted him to remain in the building. To the contrary, the resident testified that she made it abundantly clear that they would not be hanging out that evening despite his repeated requests and his unprompted assurance that he did not "want . . . to f**k or anything." The resident's roommate then opened the door to allow the resident into their suite and closed it in defendant's face, and both women ignored his subsequent knocking and requests to come in.[FN1]
The foregoing evidence, when viewed in the light most favorable to the People (see People v Danielson, 9 NY3d 342, 349 [2007]), was legally sufficient to support defendant's conviction of criminal trespass in the third degree (see People v Bjork, 105 AD3d 1258, 1262 [2013], lv denied 21 NY3d 1040 [2013], cert denied 571 US 1213 [2014]). A different outcome was a reasonable possibility given defendant's conflicting testimony that the resident asked him if he was coming inside and that they then talked without him making any comments about his sexual intent or lack thereof. Nevertheless, after reviewing the evidence in a neutral light and according deference to the jury's assessments of credibility, we find that the portion of the verdict convicting defendant of criminal trespass in the third degree is supported by the weight of the evidence (see People v Morrison, 127 AD3d 1341, 1342-1343 [2015], lv denied 26 NY3d 932 [2015]; People v Bjork, 105 AD3d at 1262).
With regard to the convictions arising out of the Stuyvesant Tower incident, "[a] person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [w]ho is incapable of consent by reason of being physically helpless," such as a [*3]person who is asleep and unconscious (Penal Law § 130.35 [2]; see Penal Law § 130.00 [7]; People v Regan, 196 AD3d 735, 738 [2021]; People v Durham, 172 AD3d 1462, 1463 [2019], lv denied 33 NY3d 1068 [2019]). "A person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling" (Penal Law § 140.25 [2]), and that crime constitutes "a sexually motivated felony when he or she commits [it] for the purpose, in whole or substantial part, of his or her own direct sexual gratification" (Penal Law § 130.91 [1]; see Penal Law § 130.91 [2]).
The victim made clear that she had never seen defendant before and did not consent to either him entering her room or the sexual activity that occurred in it, and the victim, her roommate and an acquaintance gave largely consistent testimony as to what unfolded in the hours leading up to the incident. The victim and her roommate went to an off-campus party, a party also attended by the acquaintance, where they knew almost everyone. The victim drank enough alcohol at the party to become ill, but she, her roommate and the acquaintance all agreed that she remained coherent and was able to move and speak on her own. After leaving the party, the victim, her roommate and the acquaintance took a bus back to the SUNY Albany campus and, around 2:15 a.m., arrived at Stuyvesant Tower. Upon reaching her suite on the fourth floor of the dorm, the victim immediately went into her bedroom to sleep. Her roommate went to bed a bit later and the acquaintance left, closing the doors to the bedroom and the suite behind her. The victim then testified to waking up and finding someone, who she identified at trial as defendant, on top of her and engaging in sexual intercourse with her. She demanded that defendant stop, after which defendant informed her that he had just gotten out of prison, thought she was his ex-girlfriend and asked if he could stay for a while. She declined and repeatedly asked him to leave, which he did after asking her not to call the police. Her roommate woke up around that point, and the victim called 911.
Defendant left Stuyvesant Tower and bummed a cigarette from a group of men standing outside of a nearby dorm, and two of those men testified to what transpired during that interaction. The men noted how defendant told them, among other things, that he was coming from the fourth floor of the tower, where he had performed oral sex on a sleeping woman who looked like his ex-girlfriend, then had vaginal sex with her. The testimony of the men further reflected that defendant kept looking over as police officers arrived and asked if they were going to Stuyvesant Tower. The victim, meanwhile, went to the hospital for a sexual abuse examination, which revealed irritation and trauma that could have a variety of causes but were consistent with her account of a sexual assault.
Defendant testified to a dramatically different version of events from what the other witnesses described, relating how he had met the victim at the party she attended earlier in the evening, how they had discussed getting together later, and how she allowed him into her room and willingly engaged in their sexual encounter. He stated that the victim's attitude changed after he called her by his ex-girlfriend's name, revealed that he was not a SUNY Albany student and had just been released from prison, and that she ordered him to leave. He further denied telling anyone that she had been asleep during the incident.[FN2] Nevertheless, to the extent that the issue is preserved for our review, we are satisfied that legally sufficient evidence existed for the jury to find that defendant committed the crimes of rape in the first degree and burglary in the second degree as a sexually motivated felony (see People v Melendez-Torres, 165 AD3d 840, 841 [2018], lv denied 32 NY3d 1127 [2018]; People v Judware, 75 AD3d 841, 844-845 [2010], lv denied 15 NY3d 853 [2010]; People v Brown, 251 AD2d 694, 695-696 [1998], lv denied 92 NY2d 1029 [1998]). Further, although acquittal was a reasonable possibility given the differing accounts offered by the victim and defendant, "viewing such evidence in a neutral light and weighing the competing inferences that could be drawn therefrom, we are satisfied that the verdict as rendered is supported by the weight of the evidence" (People v Judware, 75 AD3d at 845; see People v Durham, 173 AD3d at 1464; People v Mesko, 150 AD3d 1412, 1414 [2017], lv denied 29 NY3d 1131 [2017]).
Defendant next suggests that Supreme Court erroneously failed to dismiss the counts of attempted burglary in the second degree and attempted burglary in the second degree as a sexually motivated felony pertaining to the Ten Broeck Hall incident as unsupported by sufficient evidence, and that the error in allowing the jury to hear proof relating to those charges created a "spillover" effect on the other charges that requires reversal of the judgment in its entirety (see e.g. People v Baghai-Kermani, 84 NY2d 525, 531-532 [1994]). As defendant sought dismissal of those counts but did not argue that he was prejudiced by the admission of evidence relating to them, such as by moving to sever the pertinent counts of the indictment, the issue is unpreserved for our review (see People v Davison, 63 AD3d 1537, 1538 [2009], lv denied 13 NY3d 795 [2009]; People v Smiley, 303 AD2d 425, 426 [2003], lv denied 100 NY2d 542 [2003]). In any event, even accepting that declining to dismiss the attempted burglary counts was error, the jury acquitted defendant of them, and the proof supporting them was also material and relevant to, at a minimum, the criminal trespass count for which he was properly convicted. It follows that there is no reasonable possibility that allowing the jury to hear proof supporting the attempted burglary counts prejudiced defendant "in any meaningful [*4]way" so as to warrant reversal (People v Allen, 32 NY3d 611, 621 [2018]; see People v Doshi, 93 NY2d 499, 505 [1999]; People v Abdullah, 198 AD3d 1101, 1105 [2021], lv denied ___ NY3d ___ [Feb. 9, 2022]; compare People v Morales, 20 NY3d 240, 250 [2012]).
Next, Supreme Court properly prevented defense counsel from cross-examining the physician assistant who conducted a sexual abuse examination of the victim regarding the fact that the victim had human papillomavirus type 2 (hereinafter HPV), a sexually transmitted disease. CPL 60.42 prevents evidence of a victim's sexual conduct from being introduced in a sex offense prosecution unless certain conditions are met, the relevant one here being if the evidence "is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice" (CPL 60.42 [5]). In that regard, the People agreed to redact the victim's medical records to eliminate any reference to the HPV diagnosis, and defense counsel agreed not to cross-examine the physician assistant about it. Defense counsel then attempted to do so anyway, arguing that the People opened the door to the inquiry by introducing photographs of the victim into evidence depicting redness that might have been caused by HPV as opposed to the alleged sexual assault.
Supreme Court refused to allow that questioning because defense counsel offered no factual support, such as the opinion of a medical expert, for the existence of the supposed link. Supreme Court thereafter refused to revisit the issue in the midst of cross-examination after cocounsel for defendant spoke to a physician and learned that HPV was known to cause redness of the vagina and labia, as the physician was not shown the photographs of the victim and offered no opinion as to whether HPV could explain the victim's actual condition. Accordingly, given the potential for prejudice and the absence of any compelling showing that the HPV diagnosis was relevant, Supreme Court did not "abuse[] its discretion in ruling [it] inadmissible under CPL 60.42" while permitting inquiry into whether other potential explanations, including diseases as a general matter, could explain the victim's physical condition (People v White, 261 AD2d 653, 656 [1999], lv denied 93 NY2d 1029 [1999]; see People v Gaylord, 194 AD3d 1189, 1190 [2021], lv denied 37 NY3d 972 [2021]; People v Luscomb, 68 AD3d 1548, 1550-1551 [2009]). Defendant's related contention that he was denied his constitutional rights to present a defense and confront witnesses, to the extent that it is preserved for our review, is meritless in view of the fact that defense counsel was afforded "ample opportunity" to explore whether explanations other than nonconsensual sex existed for the victim's physical condition (People v Cerda, 192 AD3d 1041, 1041[*5][2021], lv granted 37 NY3d 971 [2021]; see People v Luscomb, 68 AD3d at 1550-1551; People v Scott, 67 AD3d 1052, 1054-1055 [2009], affd 16 NY3d 589 [2011]).
Defendant's further claim of judicial bias is largely unpreserved for our review in the absence of an appropriate motion or request that Supreme Court recuse itself as a result of the complained-of conduct and, in any event, our review of the record does not reveal that the conduct reflected bias and interfered with the presentation of a defense (see People v Prado, 4 NY3d 726, 726 [2004]; People v Holmes, 151 AD3d 1181, 1184 [2017], lv denied 29 NY3d 1128 [2017]; People v Lebron, 305 AD2d 799, 800 [2003], lv denied 100 NY2d 583 [2003]; People v Travis, 273 AD2d 544, 546 [2000]). Defense counsel did move for a mistrial following an instance in which Supreme Court stated that he "want[ed] to change the rules" by conducting voir dire regarding an exhibit that it believed the parties had stipulated to admit into evidence with redactions. In view of the context in which that comment was made, however, we cannot say that such an expression of displeasure reflected actual bias or "unjustly affected the outcome of the trial" (People v Darling, 276 AD2d 922, 924 [2000], lv denied 96 NY2d 733 [2001]). In short, Supreme Court's conduct during the trial did not convey to the jury any personal opinion regarding either defendant or defense counsel, and it did not deprive defendant of a fair trial (see People v Martlett, 191 AD3d 1183, 1188 [2021], lv denied 37 NY3d 966 [2021]).
Turning to the sentence imposed, Supreme Court legally directed that the sentences for the burglary and rape convictions run consecutively to one another, as "the burglary was complete once defendant entered the premises with the intent to commit a crime" for his own sexual gratification and the commission of the rape itself constituted a separate and distinct act (People v Rondon, 72 AD3d 488, 489 [2010], lv denied 15 NY3d 855 [2010]; see Penal Law §§ 70.25 [2]; 130.91 [1]; 140.25 [2]; People v Brahney, 29 NY3d 10, 14-16 [2017]; People v Taveras, 12 NY3d 21, 26-27 [2009]; People v Yong Yun Lee, 92 NY2d 987, 988-989 [1998]; People v Kownack, 20 AD3d 681, 682 [2005]; People v Whiting, 182 AD2d 732, 733 [1992], lv denied 80 NY2d 1030 [1992]). Finally, in view of defendant's prior criminal history and the nature of the offenses for which he was convicted, we do not consider the sentence imposed to be harsh or excessive (see People v Tucker, 149 AD3d 1261, 1264 [2017], lv denied 29 NY3d 1087 [2017]; People v Bjork, 105 AD3d at 1264).
Clark and Reynolds Fitzgerald, JJ., concur.
Aarons, J. (concurring in part and dissenting in part).
We agree with the majority in all respects except for that part of its decision concluding that the sentence was neither harsh nor excessive. Defendant was sentenced, as a second felony offender, to an aggregate prison term of 37 years — specifically, 22 years to be followed by 25 years of postrelease [*6]supervision for the conviction of rape in the first degree and a consecutive term of 15 years to be followed by 10 years of postrelease supervision for the conviction of burglary in the second degree. We agree with the majority that consecutive sentences were legally permissible. We would nonetheless modify the judgment by directing that the sentences for these convictions run concurrently to each other (see People v Rahaman, 189 AD3d 1709, 1714 [2020], lv denied 36 NY3d 1059 [2021]; People v Wallace, 53 AD3d 795, 798 [2008], lv denied 11 NY3d 795 [2008]; People v Cruz, 41 AD3d 893, 896-897 [2007], lvs denied 10 NY3d 933 [2008]; People v Murphy, 188 AD2d 742, 744 [1992], lv denied 81 NY2d 890 [1993]). Accordingly, we respectfully dissent in this respect.
McShan, J., concurs.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Suites are a living arrangement with multiple bedrooms and a shared common area. The door from the hallway enters into the common area of the suite, while there is a second door entering into each bedroom, either of which can be secured.

Footnote 2: Defendant also testified that he encountered the victim, her roommate and their acquaintance as they were walking back to the dorm and attempted to speak to the victim. None of the women testified to such an encounter, although the victim's acquaintance described a suspicious man "lurking" during their walk.