People v Coston (2025 NY Slip Op 02973)

People v Coston

2025 NY Slip Op 02973

Decided on May 15, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 15, 2025

CR-24-0643
[*1]The People of the State of New York, Respondent,
v
Hasaan A. Coston, Appellant.

Calendar Date:March 25, 2025

Before:Egan Jr., J.P., Pritzker, Lynch, Ceresia and Mackey, JJ.

Rosenberg Law Firm PLLC, Brooklyn (Morgan Namian of counsel), for appellant.
F. Paul Battisti, District Attorney, Binghamton (Joann Rose Parry of counsel), for respondent.

Lynch, J.
Appeals (1) from a judgment of the County Court of Broome County (Joseph Cawley, J.), rendered October 25, 2023, convicting defendant following a nonjury trial of the crimes of criminal possession of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree (two counts), criminal possession of a controlled substance in the seventh degree and criminally using drug paraphernalia in the second degree (three counts), and (2) from a judgment of said court, rendered October 25, 2023, convicting defendant following a nonjury trial of the crimes of criminal possession of a controlled substance in the third degree (two counts) and criminally using drug paraphernalia in the second degree (four counts).
In July 2021, police executed a no-knock search warrant at defendant's alleged residence in the City of Binghamton, Broome County, where they recovered narcotics and other materials associated with the sale of controlled substances. In connection therewith, defendant was charged by indictment with one count of criminal possession of a controlled substance in the second degree, two counts of criminal possession of a controlled substance in the third degree, one count of criminal possession of a controlled substance in the seventh degree and three counts of criminally using drug paraphernalia in the second degree. Defendant was released from custody pending prosecution of the charges.
In August 2022, while the aforementioned charges were pending, police executed another no-knock search warrant at a home where defendant was allegedly residing in the Village of Endicott, Broome County, where they again obtained quantities of illegal narcotics and drug paraphernalia. Defendant was charged in a second indictment with two counts of criminal possession of a controlled substance in the third degree and four counts of criminally using drug paraphernalia in the second degree. The two indictments were consolidated for a joint trial and defendant waived his right to a trial by jury. Following a bench trial, defendant was found guilty as charged and sentenced, as a second felony drug offender, to determinate consecutive prison terms on the top counts of each indictment amounting to an aggregate prison term of 12 years, to be followed by periods of postrelease supervision. Defendant appeals.
Defendant's legal sufficiency argument is unpreserved, as his motion for a trial order of dismissal was not directed at the specific issues raised on appeal (see People v Starnes, 206 AD3d 1133, 1135 [3d Dept 2022], lv denied 38 NY3d 1153 [2022]; People v Gillespie, 205 AD3d 1212, 1213 [3d Dept 2022], lv denied 39 NY3d 1072 [2023]). However, we "necessarily evaluate whether every element of each crime was proven beyond a reasonable doubt" in the context of defendant's weight of the evidence challenge (People v Hodge, 224 AD3d 1082, 1083 [3d Dept 2024], lv denied 41 NY3d 1002 [2024]; see People v Barzee, 190 AD3d 1016, 1017 [3d Dept [*2]2021], lv denied 36 NY3d 1094 [2021]).
Defendant challenges the weight of the evidence relative to the possession of controlled substances charges on the basis that the People failed to prove that he had actual or constructive possession of the narcotics recovered from the two searches or an intent to sell those narcotics. We are unpersuaded. As charged in the indictments, a "person is guilty of criminal possession of a controlled substance in the second degree when he or she knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of four ounces or more" (Penal Law § 220.18 [1]). A person is guilty of criminal possession of a controlled substance in the third degree when he or she knowingly possesses: "a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]), or "one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more" (Penal Law § 220.16 [12]). "A person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance" subject to certain exceptions not relevant here (Penal Law § 220.03). Where there is "no evidence that defendant actually possessed the drugs and drug paraphernalia, the People must establish that defendant exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized" (People v Grovner, 206 AD3d 1638, 1640 [4th Dept 2022] [internal quotation marks, brackets and citation omitted], lv denied 38 NY3d 1150 [2022]).
The evidence pertaining to the July 2021 search established that police forcibly entered the two-bedroom residence with a battering ram, where they encountered defendant alone and lying in bed. Narcotics and drug paraphernalia were found in several locations throughout the residence, including a digital scale located on the kitchen counter in front of the microwave that had "a small knotted wrap of a white chunky substance on it." Fold-top sandwich bags were found in the nearby vicinity and a box of baking soda was located on top of the microwave, which was identified by a police officer as a cutting agent commonly used to cook crack cocaine. Police located two vacuum-sealed bags of what "appeared to be cocaine" in a hollowed-out speaker box in the living room, as well as a vacuum-sealed bag containing a white substance in a tote bag on the floor of the bedroom closet. The four packages of suspected narcotics retrieved during the search were field tested and weighed, amounting to 3.1 grams of cocaine, 80.8 grams of cocaine HCL, 49.5 grams of cocaine HCL, and 40.04 grams of cocaine base. In the aggregate, this amounted [*3]to a weight of more than four ounces. Andrew Greenman, a detective with the Broome County Sheriff's office who was present for the search, testified that defendant admitted that he was the sole occupant of the residence and that he used and sold narcotics. A piece of mail addressed to defendant was also located in the kitchen of the residence, though the return address listed a different residence.
The proof relative to the August 2022 search established that the subject residence was a private home with several bedrooms on the second floor which were rented out by the owner. Police surveilled the residence for two weeks before executing the search warrant, during which they observed a vehicle registered to defendant parked in the driveway for most of the surveillance period. On the day of the search, police entered the residence through an unlocked front door and proceeded upstairs. Upon breaching a locked door to a bedroom, police located defendant sitting in a chair in front of a TV. Several items were retrieved from this location, including a box of fold-top sandwich bags, a stack of $260 in cash located on top of the dresser, and a digital scale with residue on it. Police also retrieved a backpack from the closet, which contained a large package of suspected cocaine and another package containing 21 smaller packets of suspected cocaine. The closet also had an open box of baking soda in it, as well as a jacket with approximately $1,000 in cash in one of the pockets. A wallet containing defendant's identification card was found on the bed of the room, which had keys to the front and bedroom doors attached to it. Other scales were also located during this search and a police officer testified about finding a Pyrex container with a knife, explaining that these containers are vessels "commonly use[d] . . . to cook crack cocaine in." The suspected packages of narcotics retrieved from this location were field tested and weighed, amounting to 28.3 grams of crack cocaine and 44.2 grams of cocaine, for an aggregate weight of over 2½ ounces. Another individual was at the residence at the time of the search, who was also a subject of the search warrant and suspected of selling narcotics.
Viewing the evidence in a neutral light and deferring to the fact-finder's credibility determinations, we conclude that the weight of the evidence supports the possession of controlled substances convictions. Defendant was the sole occupant of the City of Binghamton residence and the evidence established that he had possession and control over the narcotics retrieved therefrom. The intent to sell element of the third degree possession counts was also established by the drug paraphernalia found in the vicinity of the narcotics, the manner in which the narcotics were packaged and defendant's admission that he sold drugs (see People v Poulos, 233 AD3d 1169, 1178 [3d Dept 2024]; People v Colon, 177 AD3d 1086, 1088 [3d Dept 2019]; People v McCollum, 176 AD3d 1402, 1403 [3d [*4]Dept 2019]). We reach the same conclusion regarding the possession counts stemming from the August 2022 indictment. Although other individuals lived at the Village of Endicott residence — including a woman who was present at the time of the search and was a subject of the search warrant — the People provided compelling proof that defendant exercised dominion and control over the area from which the narcotics were recovered, including that his vehicle was parked in the driveway for the majority of the two-week surveillance period, the drugs were found in a locked room where only defendant was present, and keys to the residence were attached to a wallet on the bed in that room, which had defendant's identification card inside of it. The intent to sell element of the third degree possession counts was also established by the proof that scales, plastic bags and a large sum of cash were retrieved from that bedroom in the vicinity of the narcotics (see People v Poulos, 233 AD3d at 1178; People v Colon, 177 AD3d at 1088; People v McCollum, 176 AD3d at 1403). The remaining elements of the possession counts were also proven beyond a reasonable doubt.
Turning to defendant's weight of the evidence challenge to the drug paraphernalia convictions, as charged in the indictments, "[a] person is guilty of criminally using drug paraphernalia in the second degree when he [or she] knowingly possesses or sells": (1) "[d]iluents, dilutants or adulterants, including but not limited to, any of the following: quinine hydrochloride, mannitol, mannite, lactose or dextrose, adapted for the dilution of narcotic drugs or stimulants under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for purposes of unlawfully mixing, compounding, or otherwise preparing any narcotic drug or stimulant;" or (2) "[g]elatine capsules, glassine envelopes, vials, capsules or any other material suitable for the packaging of individual quantities of narcotic drugs or stimulants under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for the purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant;" or (3) "[s]cales and balances used or designed for the purpose of weighing or measuring controlled substances, under circumstances evincing an intent to use, or under circumstances evincing knowledge that some person intends to use, the same for purpose of unlawfully manufacturing, packaging or dispensing of any narcotic drug or stimulant" (Penal Law § 220.50 [1], [2], [3]).
Initially, we are unpersuaded by defendant's contention that the People failed to prove that baking soda is a "[d]iluent[ ], dilutant[ ] or adulterant[ ]" within the meaning of Penal Law § 220.50 (1) because its chemical compound is sodium bicarbonate and not one of the five substances listed in the statute. Under Penal Law § 220.50 (1), a "[d]iluent[*5][ ], dilutant[ ] or adulterant[ ]" includes but is not limited to those five enumerated substances and there was ample testimony that baking soda is a common cutting agent used to make crack cocaine. Although defendant correctly notes that the drugs found during the searches were never tested for sodium bicarbonate and, thus, there was no direct proof that the baking soda was actually being used as a cutting agent in this case, actual use is not required to sustain a conviction under Penal Law § 220.50 (1), only circumstances evincing an intent to use is required. There was circumstantial evidence from which County Court, as the factfinder, could conclude beyond a reasonable doubt that the baking soda located during the searches was intended to be used for the purpose of "mixing, compounding, or otherwise preparing" a narcotic drug. Significantly, the box of baking soda retrieved during the July 2021 search was found on top of a microwave directly behind a scale that had "a small knotted wrap of a white chunky substance" on it. The open box of baking soda found during the August 2022 search was also located in close proximity to a scale, a large sum of cash and narcotics packaged in a manner evincing an intent to sell. The proximity of the baking soda to the other paraphernalia and narcotics found during the searches, coupled with the testimony that baking soda is a common cutting agent used to cook crack cocaine, supports the convictions under Penal Law § 220.50 (1) (see People v Herrera, 223 AD3d 629, 630 [1st Dept 2024], lv denied 41 NY3d 1002 [2024]; compare People v Shire, 77 AD3d 1358, 1360 [4th Dept 2010], lv denied 15 NY3d 955 [2010]).
We reach the same conclusion regarding the criminal use of drug paraphernalia in the second degree charges under Penal Law § 220.50 (2), as the proof that fold-top plastic baggies and Ziplock bags were found in close proximity to digital scales and illegal narcotics, some of which was packaged in a manner suggesting an intent to sell, supports the convictions under this subsection. The same may be said for the charges under Penal Law § 220.50 (3) stemming from defendant's possession of the scales located in close proximity to packaged narcotics and large sums of cash (see Penal Law § 220.50 [3]).[FN1]
Defendant's judicial bias claim — premised upon the fact that the judge who presided over the bench trial was the same judge who issued the warrants and denied his pretrial motion to suppress — is unpreserved, as he did not move for recusal of the trial judge or raise a claim of bias at the trial level and, in fact, consented to a bench trial knowing full well that the same judge who reviewed the search warrants and denied his suppression motion would be presiding over the trial (see People v Casatelli, 204 AD3d 1092, 1098 [3d Dept 2022], lv denied 38 NY3d 1132 [2022]). Defendant does not identify any conflict of interest that would have required mandatory recusal under Judiciary Law § 14.
Nor do we find defendant's [*6]sentence to be unduly harsh or severe (see Penal Law § 470.15 [6] [b]). However, the sentence and commitment forms, which erroneously state that defendant is a second felony offender, must be amended to reflect his correct status as a second felony drug offender (see Penal Law § 70.70 [1] [b]; People v Thompson, 216 AD3d 1370, 1371 [3d Dept 2023]).[FN2]
Egan Jr., J.P., Pritzker, Ceresia and Mackey, JJ., concur.
ORDERED that the judgments are affirmed, and matter remitted to the County Court of Broome County for entry of amended uniform sentence and commitment forms.

Footnotes

Footnote 1: Defendant contends that his conviction under count 5 of the August 2022 indictment, charging him with a violation of Penal Law § 220.50 (3) based upon his possession of a "CR brand digital scale," must be reversed because there was no evidence that more than one scale was recovered during the August 2022 search, let alone any evidence that the scale retrieved from the bedroom was a CR brand. To the contrary, the testimony and photographic evidence established that more than one digital scale was found during the August 2022 search and the failure to establish that at least one of the scales was a CR brand does not warrant reversal, for this is not a required element of Penal Law § 220.50 (3).

Footnote 2: Although County Court stated that it was sentencing defendant as a second felony offender, the record reflects that he was actually sentenced as a second felony drug offender since the court imposed determinate sentences (see Penal Law § 70.06 [2], [3], [4] [showing that indeterminate sentences would have been required in this case if defendant was a second felony offender]). Moreover, "given that defendant is a predicate felony offender who was convicted . . . of a drug-related felony under Penal Law article 220, County Court was required to designate him as a second felony drug offender" (People v Thompson, 216 AD3d at 1371 [internal quotation marks and citation omitted]).